PeaRson, J.
 

 At January Term, 1848, of the Court of Pleas and Quarter Sessions for the County of Union, a petition was filed in the name of James Moore, one of the defendants, and Catharine his wife, Elizabeth Carnes, an infant by her guardian James Moore, and Jane Moore, setting forth that the said James, Elizabeth and Jane held in their possession as tenants in common four slaves “which had descended to the said Jane, Catharine and Elizabeth from their grandfather, one Joshua Gordon;” that Jane had intermarried in the year 1847 with one Melton Moore who is* since dead, and that Catharine had intermarried with James Moore. The prayer was, that commissioners he appointed to make partition; and such proceedings were thereupon had, that commissioners were appointed, who made partition by which one of the slaves was allotted to Jane Moore, one to James Moore, and the other two to Elizabeth, with a charge for equality of partition. At July Term, 1848, the report was filed and confirmed, and the parties respectively took possession of the negroes allotted to them. Afterwards, in May, 1849, Jane Moore sold the negro woman, who had been allotted to her, to the plaintiff, Armfield, who kept possession of her until September, 1849, when the defendant, James Moore, aided by his father, the other defendant, David Moore, took the woman and her child out of Armfield’s possession, who thereupon brought this action of replevin.
 

 At January term, 1848, of the Court of Pleas and Quarter Sessions, for the County of Union, (the same term when the petition for partition was filed,) James Moore was appointed the administrator of Melton Moore, his deceased brother. The ground of defence to the action of replevin is that Jane Moore was not in fact entitled to one-third of the slaves, as a tenant in common, at the time of the partition; for that, in truth, that third part belonged to James Moore, as administrator of her deceased husband.
 

 
 *161
 
 We concur with his Honor, who tried the case below, as to the matter of assent by the executor of Gordon, upon which point he put the case; but tire case evidently depends upon the question of estoppel, and in regard to that, we differ from his Honor.
 

 According to my Lord Coke, an estoppel is that which concludes and “shuts a man’s mouth from speaking the truth.” With this forbidding introduction, a principle is announced, which lies at the foundation of all fair dealing between man and man, and without which, it would be impossible to administer law as a system. The harsh words, which the very learned commentator upon Littlleton uses, in giving a definition of this principle, are to be attributed to the fact that before his day “ the scholastic learning and subtle disquisition of the Norman lawyers ” (in the language of Blackstone,) had tortured this principle, so as to make it the means of great injustice; and the object of my Lord Coke was to denounce the abuse, which he says had got to be “ a very cunning and curious learning,” and was “odious;” and thereby restore the principle, and make it subserve its true puipose as a
 
 plain, practical ¡fair
 
 and
 
 necessary rule of law.
 
 The meaning of which is, that when a fact has been agreed on, of decided in a Court of record, neither of the parties shall be allowed to call it in question, and have it tried over again at any time thereafter, so long as the judgment or decree stands unreversed; and when parties, by deed or solemn act,
 
 in pais, agree on
 
 a state of facts, and
 
 act on it,
 
 neither shall ever afterwards be allowed to gainsay a fact so agreed on, or be heard to dispute it: in other Words, his mouth is shut', and he shall not say, that is not true which he had before in a solemn manner asserted to be truth. For instance., one is acquitted upon the trial of an indictment, and is afterwards indicted again for the same offence; he pleads
 
 autrefois acquit,
 
 to wit, the fact has been decided of record — not even the
 
 sovereign
 
 can be heard to gainsay it, although there be an allegation of proof, subsequently discovered. So, in a civil suit, if a fact be agreed on by the parties, or be found by a verdict, and the Court acts thereon and pronounces a judgment or decree, neither party can be afterwards heard to gainsay that fact, so long as the judgment or decree stands tmreversed. An allegation of the discovery of important evidence, after the admission .or trial, or a suggestion
 
 *162
 
 that the party made the admission of record under a mistake as to his rights, cannot be listened to, without upsetting the whole administration
 
 of the
 
 law as a system, and reducing it to a mere arbitrary and despotic proceeding, by which the Court in each case, according to its view of the circumstances, may see fit to decide, in the one way or the other.
 

 So, if parties, by deed or matter
 
 in
 
 pais, agree on a state of facts,- and
 
 act
 
 thereon, neither shall afterwards be heard to say that any of tire facts were not true; as, if one sells a tract of land to which he has no title, and afterwards acquires title. Coke 352,
 
 a.
 
 Accordingly, Coke divides estoppels into suph as arise by
 
 u
 
 record,” by
 
 ec
 
 writing,” (by deed) and by “matter
 
 in
 
 pais.” Among the latter, he names partition, when made by consent, and no record is made thereof. But in our case, the facts were agreed on and presented to the Court in writing, and the same is made a matter of record; and the Court acts thereon, by appointing commissioners, whose report is afterwards confirmed, and the parties take possession in severalty, in pursuance thereof. One of the parties, Jane Moore, afterwards sells her slave to the plaintiff, who takes the slave into possession, and thereupon the defendant takes her away from him; and puts his defence on the suggestion, that when the partition was made, he admitted on the record that Jane Moore was a tenant in common, entitled to one third part of the negroes; but the admission was contrary to the truth, for that, in fact, he himself was entitled to that third part, as the administrator of his brother, the husband of the said Jane.
 

 If partition, by matter
 
 in pais,
 
 estops, of course partition, by matter of record, estops. Here we have facts agreed on by the parties; entered on
 
 the
 
 record; partition and decree in pursuance thereof; possession in severalty, and acts of ownership by the respective parties; and in regard to the slave in controversy, a sale to a third person: And the question is, can the defendant, after his admission of record, and the decree of the Court thereon, and the acts of the parties in pursuance thereof, be heard to say that, in fact, Jane Moore was not a tenant in common? In other words, can he be heard to gainsay what he has said on record ?
 

 A Court, professing to administer law as a system, ought not to
 
 *163
 
 allow one of the parties to the record to deny a fact, upon which the decree (remaining unreversed) was made, and thereby justify the high-handed measures resorted to by the defendants in this case, by way of a short cut, as the means of correcting an alleged mistake in the record. Possibly, if the defendant really acted under a mistake, a Court of Equity, where the rights of the purchaser can be fully protected, and the sums which may have been paid for equality of partition, properly adjusted and refunded, may have power to correct it. But certainly a Court of law, which acts by a direct and absolute judgment for the one side or the other, cannot allow a party to deny an admission which he has made in a Court of record.
 

 Coke Lit. 170, and this case is put: husband and wife, tenants m special tail, have issue a daughter; the wife dies; the husband by a second wife has issue another daughter, and dies; the two daughters enter and make partition. The eldest is concluded from saying that the youngest is not heir, in respect of the privity in their persons; but the issue of the eldest, after her death, may avoid the partition
 
 by force of the Stat. de donis.
 
 So, if tenant in fee simple has issue two daughters,
 
 bastard eigne
 
 and
 
 mulier-
 
 puisne, who enter and make partition, the estoppel binds forever. Hargrave, in a note upon this passage, says
 
 “
 
 that in a Coke on Littleton which he had with M. S. notes and references, the annotator observes,
 
 1 if two make partition in a Court of record, when one of them had no right, he thereby shall gain a moiety by estoppel or conclusion.
 
 Bro. Nov. Cas. pt. 306. But otherwise, I conceive, of partition
 
 in pais,
 
 though the book speaketh generally.’ ”
 

 In our case, the partition was in a Court of record, and the authorities are in point, without calling in aid any special circumstance. But there is a special circumstance in our case, making it almost precisely analogous to the two special cases put by Coke. Jane Moore had owned a third part of the slaves — she still claimed it — had a colorable title therefor — and her right was conceded by the partition of record, to which the administrator of her husband was a party, although not noticed as such. Coke Lit. 252, an estoppel must be certain; that is, the fact agreed on, or found by the jury, must be some particular fact, and not a generality,
 
 *164
 
 •or matter of inference. Here the fact agreed on is certain, to wit; that J ane Moore was entitled, as a tenant in common, to one-third part of.the four slaves. This is a full answer to
 
 Knight
 
 v. Cole, 1. Shower’s 151, so far as regards the 1st resolution, which alone was supposed to favor the view taken of this case in favor of the defendants. (The 2nd resolution will be referred to again.) The case was this: A. recovered against B. a judgment for ¿#600, and made J. S. and J. D. his executors and died. B. made C. his executor, and gave a legacy of ¿#5 to J. D., and died. J. D., by deed, acknowledged the receipt of the ¿#5 of C., and thereby released the said legacy and
 
 all
 
 actions,
 
 suits and demands which he had against C.
 
 It was adjudged that nothing was released but the ¿#5, upon the ground that the particular reference to the receipt of the ¿#5 excluded the idea of an intention to release the ¿#600; and so the case was made to turn on a question of construction. Here, there is no room for construction, because the particular fact is stated and set forth as a thing agreed on, upon which the Court and the parties act.
 

 Again:, at the same page, 252, a, Coke says estoppels must be mutual, that is, if one side is bound the other must be. It only includes parties and privies, and does not extend to a stranger; 'whereupon the defendant, James Moore, says, that
 
 in the character
 
 of the administrator of his deceased brother, he was a stranger in regard to the petition for partition, and the other proceedings of record in the County Court of Union; and therefore in the character of administrator, he ought not to be concluded thereby. This is the only view of the case which has presented any difficulty; but after much consideration, we are of opinion, both upon the reason of the thing and upon authority, that the principle that one shall not be allowed to gainsay what he has admitted of record, and what the Court and the parties have acted on, applies; and the defendant is estopped from setting up a title which he .had at the time of the filing of the petition, at the time of the division, and at the time the report was filed and confirmed — although such title was held
 
 en auter droit.
 

 When he filed the petition making the admission, and when the report was filed and confirmed, upon the supposition that Jane Moore had, as a tenant in common, one-third part of the negroes,
 
 *165
 
 he was entitled to one-third part derived from his wife, Elizabeth Carnes, was also entitled to one-third part, and we will suppose that he was entitled also to the other third part derived from his intestate: if any one had injured the property, he could in his own name have recovered damages as owner of two-thirds, without saying any thing about having derived title to this third from his wife, and that third from his intestate. If he had sold the ne-groes, both of his third parts would have passed, although the bill of sale was signed without any allusion to the mode in which he had derived title. Now, in effect, partition amounts to a mutual transfer of title to different parts; that is, one passes his right to that, to be held in severalty, in consideration of a transfer by the other to this, to be held in severalty. So each transfers to the other" a part of the whole, and the
 
 corpus
 
 is divided. Consequently, according to the record, James Moore has, in solemn form transferred to Jane Moore the negro woman in controversy, and now seeks to take her back upon an alleged mistake. .
 

 Mr. Hargrave, in his note referred to, takes it as settled, that
 
 “
 
 if partition is made
 
 in a Court of
 
 record, when one of the parties has no right, he shall thereby gain a moiety by estoppel or conclusion.” There is no distinction to take this case out of the rule thus announced by the very highest authority among the writers uvon the common law.
 

 Again: In
 
 Tharp
 
 v.
 
 Tharp,
 
 1 Ray. 235, it is held,if a release relates to a particular subject only, general words in it shall be confined to that subject; but it is added, if the release uses general words only, it shall be taken in a general sense, and most strongly against the releasor: as, when a release is made to A. of all actions, it releases all several actions, as well as all joint actions.
 
 “ So, if an executor releases all actions, it will extend to all actions which he hath in both rights;
 
 for, again, in the 2nd resolution, in
 
 Knight
 
 v.
 
 Cole,
 
 Shower’s 153, it is said, if an executor makes a deed for all of
 
 his
 
 goods, such as he holds as executor will not pass, for he has them
 
 en outer droit.
 
 But if he makes a deed for
 
 a thing in particular,
 
 it passes, and he shall not be after-wards heard to say that he acquired it
 
 en uuter droit.
 
 For this is cited Leon. 65, and several cases in the Year Books.
 

 
 *166
 
 So, we conclude that the authorities, as well as the reason of the thing, are against the defendants.
 

 But it was said by the defendant’s very learned counsel, Mr. Moore, that by looking at the will of Gordon, it appears the
 
 legal title
 
 is still in his executor, one Cureton, notwithstanding his assent; for that he was to hold the title as trustee for the infant grandchildren, and the title was thus in Cureton as trustee, at the time of the partition. If the defendant is estopped from setting up title in himself, as administrator of his brother,
 
 a fortiori,
 
 he is estopped from relying upon a title which may be outstanding in the executor of the grandfather of the wife of his brother.
 

 Per Curiam. Judgment reversed, and
 
 venire de novo
 
 awarded.