## WOOD v. BROWNING et al.

### (Circuit Court of Appeals, Fourth Circuit. November 4, 1909.)

### No. 879.

JUDICIAL SALES (§ 47*)—COLLATERAL ATTACK.

In a creditors' suit in a state court of competent jurisdiction to subject certain lands to judgments, plaintiff was joined as a defendant on an allegation that the judgment debtor had previously granted to him coal rights in certain of the lands, and appeared by counsel. On the report of a commissioner to whom the matter was referred, the court found that the lands were subject to the judgments sued on, and by its decree they were sold without any reservation. The sale was confirmed and deeds executed purporting to convey the lands in fee simple. *Held*, that the decree, unappealed from, was conclusive on plaintiff, and the sale cut off any right he may have had in the lands or the coal thereunder, and that he could not attack the same collaterally by an action against the purchasers.

[Ed. Note.—For other cases, see Judicial Sales, Dec. Dig. § 47.*]

In Error to the Circuit Court of the United States for the Southern District of West Virginia, at Charleston.

Action by Stuart Wood and others against Ballard Preston Browning and others. Judgment for defendants, and plaintiff Wood brings error. Affirmed.

This action was instituted in the Circuit Court of the United States for the Southern District of West Virginia. The declaration contains three counts, in which Stuart Wood was the sole plaintiff in the first count, and George L. Harrison, Jr., and Martin Luther Kohler, trustees, and the said Stuart Wood were the plaintiffs in the other two counts. The said trustees suffered a nonsuit, and the case was tried on the first count only. Of the original 12 defendants, the case was dismissed as to David Thomas Browning, Ballard Preston Browning, Jesse Van Buren Browning, John Lee Browning, Phœbe Browning, La Fayette Marshall Browning, and Sarah B. Browning; John L. Stafford filed a disclaimer as to any lands described in the declaration, except as to four tracts containing, respectively, 251 acres, 288 acres, 335½ acres, and 127½ acres; and Edgar P. Rucker, W. W. Hughes, and L. C. Anderson filed disclaimers as to any lands described in the declaration, except as to 5 tracts containing, respectively, 153 acres, 127½ acres, 288 acres, 251 acres, and 100 acres. Edgar P. Rucker died, and the case was revived in the name of his sole devisee, Maude A. Rucker.

The case was tried at the June term, 1908, of the court, and the jury found a verdict for the plaintiff (Stuart Wood) on the first count of the declaration against the defendant Mary F. Chafin, and found a verdict in favor of the other 10 defendants, to wit: Ballard Preston Browning, Jesse Van Buren Browning, John L. Browning, Phœbe Browning, L. M. Browning, Sarah B. Browning, Maude A. Rucker, J. L. Stafford, W. W. Hughes, and L. C. Anderson. To this judgment in favor of said defendants the plaintiff (Stuart Wood) sued out a writ of error. The verdict of the jury in favor of the above-named 10 defendants involved the 4 tracts of land above mentioned, containing, respectively, 251 acres, 288 acres, 335½ acres, and 127½ acres, which were conveyed by two deeds from J. Cary Alderson, special commissioner, one dated July 21, 1900, to the defendant Ballard Preston Browning, and the other dated July 23, 1900, to the defendant John Lee Browning. The plaintiff in the lower court took the position that both he and the defendants claim title to these four tracts of land under a common source, and in support of this contention offered in evidence a deed dated October 27, 1887, from John R. Browning and wife to John F. Keator, which deed

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
176 F.—18

was recorded in the county clerk's office of Logan county, W. Va., on October 29, 1887, a deed dated March 23, 1888, from the said Keator and wife to the said Wood, and recorded in the said clerk's office on April 2, 1888, a deed dated July 7, 1888, from the said John R. Browning and wife to Stuart Wood, recorded in said clerk's office in Deed Book K, p. 175, and to further support this contention the plaintiff introduced part of a record' in a chancery cause in the name of U. B. Buskirk v. John R. Browning et al., which was instituted in the circuit court of Logan county, W. Va., in 1893. The defendants also introduced certain portions of the record in said chancery cause in addition to those introduced by the plaintiff. From an inspection of those portions of the record in said chancery cause which were introduced by both the plaintiff and defendants and made a part of the record in this case it appears that it was a suit instituted by U. B. Buskirk, a judgment creditor of the said John R. Browning, and was conducted as a general creditors' suit for the purpose of subjecting all the lands owned by the said John R. Browning to the payment of various liens thereon set up in said suit. The record in this case shows that the second amended bill in the said chancery cause was filed in 1896, and in this second amended bill it was alleged that John R. Browning was the owner of 2,240 acres of land and attempted to convey to John F. Keator the coal and minerals under a part of this land by deed dated the 27th of October, 1887, and that the said John F. Keator attempted to convey the same to Stuart Wood, and that the said Browning and wife attempted to convey it to Stuart Wood by deed dated July 7, 1888. To this second amended bill John F. Keator and Stuart Wood were made defendants, and it is insisted by defendants that Keator and Wood were made defendants to this suit because of their claim to an interest in the lands of the said John R. Browning, which were sought to be sold to satisfy the liens against the said John R. Browning. It appears that both John F. Keator and Stuart Wood were represented in said suit by counsel who accepted service of process for them.

It appearing that the object and scope of this suit was to ascertain the real estate then or formerly belonging to the said John R. Browning upon which the judgments against him were liens, and to subject the same to the payment of said liens, and it appearing from the pleadings that John R. Browning then owned and had formerly owned a large amount of real estate, upon which the judgments set up in the pleadings were liens, to the payment of which the lien creditors were entitled to subject the said lands, and it further appearing that the defendant, Stuart Wood, and John F. Keator, as well as other defendants, might assert claims to part of said lands or interests therein, in conflict with the contention of the lien creditors, it was necessary to refer the cause to a commissioner to enable the court to pass upon these various questions; and accordingly by decree entered in said cause on the 6th day of May, 1906, said cause was referred to J. M. Chafin, one of the commissioners in chancery in said court, and he was directed to ascertain and report:

"First. The amount of real estate owned by the said John R. Browning, its location, and his title thereto, and also the amount of real estate formerly owned by him, subject to the lien in the bill set forth.

"Second. All the liens on said real estate, or any part thereof, the holders of such liens, the amount due each, and the priorities thereof.

"Third. Such other matters and things as may be required by any party in interest and deemed pertinent by said commissioner."

In accordance with the requirements of this decree, the commissioner reported as follows: "That, after a careful examination of the papers in said cause, and other evidence before him, he finds the following facts which he now represents to your honor, in the order required by said decree."

The commissioner then reported that John R. Browning "is the owner in fee simple of a tract of 251 acres, * * * and also a tract of 288 acres," and that the said J. R. Browning on the 10th day of December, 1890, conveyed the 335½-acre tract to his daughter, Eliza Browning, and the 127½-acre tract to his son, John Lee Browning, and that the commissioner is unadvised as

to whether or not the last two mentioned tracts of land are subject to the liens in the bill set forth."

On this report is the following indorsement: "Retained in my office for ten days for exceptions and none taken.  J. M. Chafin, Commissioner."

These are the four tracts in controversy in this action.

The commissioner's report was filed in the clerk's office on July 21, 1896, and on May 3, 1897, the report was confirmed as to the first two mentioned tracts and the court held that the last two said mentioned tracts were also subject to said liens, and directed all four of these tracts, together with certain other lands, to be sold by a commissioner of the court to be appointed for the purpose.  The report of J. Cary Alderson, the commissioner who was appointed to make such sale, shows that the said lands were sold in accordance with the directions of said decree, and that B. P. Browning, being the highest bidder, became the purchaser of the 251 acres, 288 acres, and 335½ acres, and that John Lee Browning, being the highest bidder, became the purchaser of the 127½ acres.  B. P. Browning was not a party to said chancery suit.  By a decree entered October 29, 1897, the said report of sale was confirmed, and the said J. Cary Alderson, who was appointed commissioner of the court for the purpose, was directed to execute and deliver proper deeds conveying the said lands to the said purchasers;  and, in accordance with said decree, the 251 acres, the 288 acres, and the 335½ acres were conveyed by said commissioner to B. P. Browning by deed dated July 21, 1900, and the 127½ acres to John Lee Browning by deed dated July 23, 1900.

Malcolm Jackson and C. W. Campbell (Brown, Jackson & Knight and Campbell, Heffly & Davis, on the brief), for plaintiff in error.

L. C. Anderson and Barnes Gillespie (W. W. Hughes, M. O. Litz, and Greever & Gillespie, on the brief), for defendants in error.

Before GOFF and PRITCHARD, Circuit Judges, and BOYD, District Judge.

PRITCHARD, Circuit Judge (after stating the facts as above). The real controversy in this case centers around the action of the court below in instructing the jury as follows:

"The court instructs the jury that as it appears from the evidence that Stuart Wood, the sole plaintiff herein, was made a party to the chancery suit of U. B. Buskirk v. John R. Browning et al., in the circuit court of Logan county, W. Va., and that service of process in said suit was duly accepted by his attorney, the decree of sale made in said suit, the sales made thereunder, the decree of confirmation of such sales and the deeds made pursuant thereto cannot be attacked collaterally in this proceeding, and as it further appears from the evidence introduced in the case that no exception or reservation as to title to any part of the lands decreed to be sold was made either in the decree of the court directing such sale or in the deeds made in pursuance of the sales made thereupon, you are instructed that said deeds, in so far as they purport to convey lands embraced in this suit, present a legal defense to the same, and the plaintiff is not entitled in this action to recover the possession of the minerals thereupon from any defendant claiming title to any portion of the lands in suit under the deeds so made in said chancery suit."

The submission of this issue sharply defines the question involved herein.  That the plaintiff may have a remedy in another forum, or in another proceeding is not for this court to determine at this time, and the only question which we can consider is as to whether the court below, under the pleadings in this case, and in view of the evidence presented, was justified in submitting the instruction in question.

It is sought by the plaintiff in error to attack collaterally the proceedings of a court of general jurisdiction, to which cause plaintiff

in error was a party. That the circuit court of Logan county, W. Va., had jurisdiction of the parties and subject-matter in controversy in the case of U. B. Buskirk v. John R. Browning et al., does not seem to be seriously controverted. An inspection of the record shows that plaintiff in error was made a party to the suit instituted in the state court, and was represented by counsel.

In the case of Lee v. Smith, 54 W. Va. 98, 46 S. E. 352, the court quoted with approval Black on Judgments, § 245, which reads as follows:

"Where the court has jurisdiction of the parties and the subject-matter in the particular case, its judgment, unless reversed or annulled in some proper proceeding, is not open to attack or impeachment by parties or privies in any collateral action or proceeding whatever. 'The doctrine of this court, and of all the courts of this country, is firmly established that, if the court in which the proceedings took place had jurisdiction to render the judgment which it did, no error in its proceedings which did not affect the jurisdiction will render the proceedings void, nor can such errors be considered, when the judgment is brought collaterally into question.' This principle is not merely an arbitrary rule of law established by the courts, but it is a doctrine which is founded upon reason and the soundest principles of public policy."

Also in the case of Lemmon v. Herbert, 92 Va. 653, 24 S. E. 249, the court said:

"The court here had the power to decide whether the case made by the bill was within the jurisdiction of a court of equity; and, having proceeded in the case to a final decree, must necessarily have determined that question in favor of its jurisdiction. It may have erred in its decision, but such error would not avoid its decree. The decree would merely be erroneous, but conclusive until reversed or vacated. This court could not determine whether the case was one of equitable jurisdiction or not without an inquiry into the facts, and, where inquiry is necessary, the decree, however erroneous, is not void. Fisher v. Bassett, 9 Leigh (Va.) 119, 131, 33 Am. Dec. 227; Cox v. Thomas, 9 Grat. (Va.) 323, 328; Gibson v. Beckham, 16 Grat. (Va.) 321, 326; and Cordoza, Sheriff, v. Epps, Sergeant, etc. (decided at last term) 23 S. E. 296."

In the case of Quesenberry v. Barbour, 31 Grat. (Va.) 499, 500, the court said:

"The subject was undoubtedly within the jurisdiction of the court which rendered the decree. It was the sale of a trust estate, and one, too, in which infants were interested, in each of which cases the statute law existing at the time of the rendition of the decree authorized the court to make the same. The judgment or decree of a court of competent jurisdiction over the subject-matter thereof is conclusive against the parties thereto until it is set aside or reversed by some proceeding in the case in the same or an appellate court. It cannot be set aside or annulled in any collateral proceedings."

The case of Zollman v. Moore et al., 21 Grat. (Va.) 313, is very much in point. There Mrs. Moore and her adult children filed a bill in chancery against her infant children, in which it is stated that the father of Mrs. Moore conveyed to her and her husband, the father of her children, jointly a tract of land; that they were desirous of partitioning the land, but that the same was not susceptible to partition in kind, and asked that the land be sold for the purpose of partition. Pursuant to the decree obtained in the case, the land was sold and conveyed to Zollman (who paid the purchase money), and the proceeds from the sale divided among the parties to the suit. Mrs. Moore, however, took only a dower interest of the proceeds, and the children the

balance. Afterward it was discovered that Mrs. Moore was the sole owner of the tract of land at the time the sale was made, and thereupon she filed a bill in equity, setting up the facts, claiming that a mistake was made, and asked that the sale be set aside. The court said:

"It is true that in Virginia the maxim caveat emptor strongly applies in judicial sales; but it only applies as between the purchaser and third persons who are not parties to the suit. Their interests are not affected by any proceedings that may be had, and the purchaser must always incur the risk of losing the estate by some superior title. But the court does undertake to sell the title of the parties to the suit. Whatever that may be, the purchaser acquires it. * * * It was argued, however, that, as the suit proceeded on the assumption of a right of property in the children, the effect of the decree and sale is simply to vest in the purchaser such title as they had, leaving the rights of Mrs. Moore unaffected. This view is based on an entire misconception of the effect of the sale, its confirmation, and the operation of the deed made under the order of the court. The prayer of the bill was for the sale of the tract of land. The decree directed a sale accordingly. The commissioner reported that he had sold the tract; and this sale was confirmed, and the commissioner directed to convey the tract to the purchaser, and this was done by the deed executed January 4, 1864. It is therefore too clear for argument that the effect of these proceedings was to convey the land to the purchaser, and to clothe him with the title of all the parties to the suit. If this were not so, it is obvious that Mrs. Moore would not encounter the slightest difficulty in maintaining her action of ejectment against the purchaser, and consequently she could have no claim to relief in equity."

In Van Fleet's Collateral Attack, § 749, it is said:

"A bill in equity for partition against husband and wife alleged that the wife owned the undivided one-third. On these allegations, without any cross-bill between the defendants, a decree was entered that the husband and wife owned the undivided one-third, and it was set off to them. Afterwards the wife alone brought an action to recover the lands so set off, on the theory that the decree, so far as the husband was concerned, was outside of the issues and void, but the court held that it was not void and was binding on her collaterally; citing Allie v. Schmitz, 17 Wis. 169, 173."

This proposition does not seem to be controverted by the plaintiff in error, but it insists that:

"It is not enough for a court to have jurisdiction of the parties and general subject-matter of the suit. Its jurisdiction must also rest upon the pleadings and the issues."

Unfortunately the entire record in the suit of Buskirk v. Browning, supra, is not before us; but on inspection of the portion of the record of that suit, which is made a part of the record in this case, it is apparent that the title of Browning to the lands sought to be subjected to the liens in that proceeding was put in issue, inasmuch as it was necessary for the court to ascertain and determine what real estate or interests in real estate, then owned or formerly owned by Browning, could be subjected to the liens of the judgments upon which the suit in that instance was instituted. The fact that plaintiff in error (Wood) was made a party to that proceeding can only be accounted for upon the theory that the plaintiff in that proceeding was of opinion that the said Wood was asserting, or might assert, an interest in a part of the real estate which was sought to be subjected to the liens of said judgments.

In the second amended bill filed in the cause of Buskirk v. Browning et al., among other things, it is, alleged:

"That on the 27th day of October, 1887, by deed of that date, and recorded in Logan county court clerk's office, in Deed Book J, p. 302, the said John R. Browning and wife attempted to convey to the defendant John F. Keator the minerals, etc., in, upon, and under 470½ acres of land, part of the above tracts of land, as well as the minerals, etc., in, upon and under certain other tracts of land, and other lands in fee, and that on the 7th day of July, 1888, by a supplemental deed of that date, and recorded in said clerk's office in Deed Book K, p. 175, the said John R. Browning and wife likewise attempted to convey the minerals, etc., in, upon, and under said 470½ acres of land, as well as certain other minerals, to the defendant, Stuart Wood, transferee of the said Keator.

"Plaintiff charges that at said times the said John R. Browning had only an equitable interest, and that a small one, in the said 470½ acres of land and in 300 acres attempted to be conveyed in fee, that the payments made by said Browning to Nighbert and Lawson on their said judgment were all after the date of said deed to Keator, that said pretended deeds to Keator and Wood passed no legal title as to the 770½ acres of land above mentioned, and that the said Wood is only entitled to a conveyance of the legal title thereto subject to the liens, still unpaid, which have in the meanwhile attached to the real estate of the said John R. Browning.

"Plaintiff further complaining, says that on the 1st day of December, 1890, the said defendant John R. Browning, in addition to the equitable interest in the lands above mentioned, was the owner in fee simple of the surface of 50 acres of land surveyed for him June 17, 1875, part of a 600-acre tract surveyed October 28, 1875, part of a 500-acre tract surveyed September 3, 1874, 418 acres and 165 acres conveyed to him from Hugh Toney by deed dated October 29, 1887, and recorded in Logan county court clerk's office in Deed Book J, p. 300, and part of a 489-acre tract conveyed to him from L. D. Chambers, commissioner of school lands, by deed dated October 2, 1887, and recorded in said clerk's office in Deed Book J, p. 312, all on Island creek, in Logan county, which said tracts and parcels of land, together with the 470½ acres of land above mentioned, aggregated by survey 2,240 acres of land. A copy of the attempted deed from John R. Browning and wife to Stuart Wood, containing the calls of said survey, is filed herewith as part of this bill, marked 'Exhibit No. 39.'"

While the bill in this respect is somewhat indefinite, yet it contains an allegation to the effect that the pretended deeds from Browning and wife to Keator and Wood passed no legal title to the 770½ acres of land mentioned. It is also stated that the said Browning and wife attempted to convey to the defendant, John F. Keator, the minerals in, upon, and under the said 470½ acres of land, etc., and we think these allegations sufficiently explicit to put defendant (Wood) on notice that any title he might have had to said lands was being then and there assailed; and this, taken in connection with the reference to the commissioner, which will be referred to later, unquestionably was sufficient to require Wood, if he desired so to do, to assert in that suit any right or title that he might have had to the premises in question. The court in that proceeding was evidently unable to determine, upon the reading of the bill and amended bill, as to what particular real estate was subject to said liens; hence it was that the court referred the case to the commissioner for the purpose of obtaining information on that subject. The decree of reference clearly and distinctly put in issue the title of Browning to all the tracts involved in this controversy. At that time Stuart Wood was a party to the proceeding, and

could (if he had so desired) by proper pleading and offer of proof, have informed the commissioner as to any claim he may have had in the mineral interests in any of the tracts in question. That the court had jurisdiction to make this order of reference cannot be seriously controverted; and, it appearing as it does that Wood was a party to the suit at the time the reference was made, it necessarily follows that he was bound by any findings that may have been made by the commissioner with respect to any interest which it was alleged that Browning had in the lands that were sought to be subjected to the liens as hereinbefore stated. Therefore, when the report of the commissioner (in which it was found that Browning was the owner of the lands therein described, and specifying the lands which were subject to the liens) was confirmed by the court, the decree of confirmation thus obtained was undoubtedly binding upon all the parties to the suit until modified or set aside by a proper proceeding in that case and in that court, or in an appellate court having jurisdiction to hear and determine on appeal the questions involved therein.

In the case of Kirk v. Hamilton, 102 U. S. 79, 26 L. Ed. 79, in referring to the conduct of Kirk, who sought to avoid the proceedings in the case of Moore & Co. v. Kirk & Co., by which the property in controversy was conveyed to the defendant, the court said:

"* * * He knew, as we have seen, that the defendants claimed the property under a sale made in an equity suit to which he was an original party. The sale may have been a nullity, and it may be that he could have repudiated it as a valid transfer of his right of property. Instead of pursuing that course, he, with a knowledge of all the facts, appeared before the auditor and disputed the right of certain creditors to be paid out of the fund which had been raised by the sale of his property. He forebore to raise any question whatever as to the validity of the sale, and by his conduct indicated his purpose not to make any issue in reference to the proceedings in the equity suit. Knowing that the defendants' claim to the premises rested upon that sale, he remained silent while the latter expended large sums in their improvement, and, in effect, disclaimed title in himself. He was silent when good faith required him to put the purchaser on guard. He should not now be heard to say that that is not true which his conduct unmistakably declared was true and upon the faith of which others acted."

While this suit was instituted in the first instance by a single creditor, it appears from an inspection of the record that other creditors came into the suit at a later date, and it thereby became a general creditors' suit, upon the same being referred to a commissioner with instructions to report liens, etc. There was not only a proper reference to ascertain what real estate at that time belonging to Browning was subject to the liens of the judgments upon which the suit was based, but it appears that a petition was filed by R. W. Peck, a creditor, who adopted the allegations of the bill; that John R. Browning was the owner of 3,000 acres of land on Island creek, which, it appears, included the 2,240 acres of minerals which are claimed to be owned by Wood. There is nothing in the record to show that plaintiff in error (Wood) was denied an opportunity of appearing before the commissioner and offering in evidence any papers or documents which he may have had and upon which he relied to establish his claim; nor is it contended that he did not have the right to object and except to the commissioner's report. Suppose Wood had appeared be-

fore the commissioner and offered evidence as to his title, and the commissioner had made the report that he did, could it be reasonably contended that such report, when confirmed by the court, would not be res adjudicata in so far as Wood's title might be affected thereby? He certainly had the opportunity, as well as the right, to make any exception to such report; but, having failed to do so, he cannot now come into this court and by collateral attack accomplish that which he might have accomplished had he availed himself of the rights to which he was entitled by virtue of being a party to that proceeding.

We do not think that the facts and circumstances under which the sale of the property was made in pursuance of the decree of the chancery court in the suit of Buskirk v. Browning are such as to render said sale void.

In the case of Jones v. Coffey, 97 N. C. 347, 2 S. E. 165, Judge Merrimon, in speaking for the court, said:

"The plaintiffs are the heirs at law of John T. Jones and Walter L. Jones, who died intestate long before this action began, and, as the plaintiffs allege, seised of the land described in the complaint, which in that case descended to them as such heirs. The defendants allege in their answer that the land in question belonged to Edmund P. Jones, who was the ancestor of the plaintiffs, and who died in 1878, leaving a will, which was duly proven; that afterwards the First National Bank of Charlotte and others brought action to the fall term 1897 of the superior court of Caldwell county against the executor of the will mentioned and the present defendants; that in the course of that action a receiver was appointed, and the land in question was sold under a proper decree made therein; that at that sale the defendants became the purchasers of the land, paid the purchase money therefor, the sale was duly confirmed, and the receiver, under the direction of the court, made a proper deed to them, under which they claim title to the land. On the trial in this action, a question arose as to whether the land in controversy was a part of the land sold as above stated and embraced by the decree and deed under which the defendants claim. It was identified as a part of the land so sold; but the plaintiffs contended that, if it was, it was so embraced by inadvertence, mistake, and misapprehension; that, in fact, it belonged to them as heirs at law of their brothers as first above stated, who died in 1863, the others in 1864.

"The defendants contended that the plaintiffs are estopped by the record in the action mentioned, which was put in evidence on the trial; but the court gave judgment for the plaintiffs. Whereupon the defendants, having excepted and assigned errors, appealed to this court. It appears that in the case of the First National Bank of Charlotte and others against the executor of the will of Edmund P. Jones, deceased, and the present plaintiffs, mentioned in the pleadings, the court had complete jurisdiction of the parties thereto, including the present plaintiffs, and as well 'of the subject-matter, the land embraced by it. The land now in controversy was embraced by it, although this was controverted, and sold under a valid decree so far as appears; the defendants being the purchasers. They paid the purchase money, the sale was confirmed by the court, and, under its direction, the receiver executed a proper deed of conveyance to the defendants. In that action the rights of the plaintiffs here contended for can be directly in question, and they ought then to have set up their title to the land they now seek to recover. As they did not, they are concluded by the record made against them. They are bound by it so long as the judgments therein remain unreversed, and they cannot attack it collaterally in the present action. Burke v. Elliott, 26 N. C. 335, 42 Am. Dec. 142; Armfield v. Moore, 44 N. C. 157; Gay v. Stancell, 76 N. C. 369; Morris v. Gentry, 89 N. C. 248.

"The plaintiffs contend that, if the land they seek to recover by this action was embraced by and sold under the decree in the action mentioned, it was sold by mistake and misapprehension. It appears that that action is not

yet determined. If so, the plaintiffs ought to seek their remedy, if they have any. in it. If it is determined, then by an independent action. Long v. Jarrett, 94 N. C. 443, and the cases there cited.

"There is error. The judgment must be reversed, and judgment entered below for the defendants. To that end, let this opinion be certified to the superior court according to law. It is so ordered."

It is a fundamental principle of the law that one shall have his day. in court, and it cannot be denied that the plaintiff in error in this case had his day in court, inasmuch as he was a party to the suit of Buskirk v. Browning. Once he became a party to that suit, it was incumbent upon him to examine every paper filed in the case and keep himself fully advised as to the procedure therein; and this he failed to do, it appearing from the record that no answer was filed by his counsel, nor was anything done in his behalf which indicated a purpose on his part to assert title to any interest in the lands that were sought to be sold in that proceeding.

It is insisted by counsel for plaintiff in error that this court should find from the record that the proceedings in the state court were void. As we have said, only a portion of the record in that cause is before us. There is nothing contained therein to show that all the pleadings or only a part of the pleadings, or all the evidence or only a part of the evidence, is included in the transcript; but it does affirmatively appear in that part of the record which we have that the land in controversy in this action was sold pursuant to the decree of a court of general jurisdiction; and, as such, having jurisdiction of the general subject-matter, in a suit wherein plaintiff in error was a party. In an action like the one at bar, the burden is on the plaintiff to show, by the whole record, that the proceedings sought to be attacked are void, and this cannot be accomplished by only offering a portion of the record.

In the second amended bill it is alleged that John R. Browning conveyed certain tracts of land to his daughter, without any reservation whatsoever contained in the deed, and this must be construed to mean that he conveyed to his children a fee-simple title, and cannot, by any rule of construction, be construed to mean that he only conveyed the surface.

The commissioner's report shows that John R. Browning was the owner of these tracts of land, and the decree entered in pursuance thereof provided that these tracts should be sold as the property of John R. Browning. The purchaser at the sale thereof had every reason to believe that the decree contemplated the sale of the whole tract, and that a fee-simple title for the same was to be made in pursuance thereof.

The commissioner's report, among other things, says:

"J. R. Browning is the owner in fee simple of a tract of 251 acres of land on Island creek, * * * also a tract of 288 acres of land on Island Creek."

In the report of sale the special commissioner says:

"The undersigned special commissioner would report that * * * he sold at public auction the following real estate in the bill and proceedings in said cause mentioned, to wit: 251 and 288 acres of land on Island creek, * * * and 335½ and 127½ acres on Island creek. That B. P. Browning,

being the highest bidder therefor, became the purchaser of the 251, 288, and 335½ acre tracts of land for the sum of $955.00. * * * That John Lee Browning, being the highest bidder therefor, became the purchaser of the said 127½ acres of land for the sum of $75.00."

The decree confirming said sales says:

"This day, Special Commissioner J. Cary Alderson rendered and filed his report of sale herein, and it appearing * * * that said commissioner * * * sold the following real estate in the bill and proceedings herein mentioned, to wit: 251 and 280 acres of land on Island creek * * * and 335½ and 127½ acres of land on Island creek, * * * that B. P. Browning, being the highest bidder therefor, became the purchaser of the said 251, 288 and 335½ acre tracts of land for the sum of $955.00 * * * and that John Lee Browning, being the highest bidder therefor, became the purchaser of the said 127½ acre tract of land for the sum of $75.00. * * * And, there being no exceptions or objections to the said report, the same, together with said sales, is in all things approved and confirmed."

By the last-mentioned decree J. Cary Alderson was appointed a special commissioner to convey said lands to the purchasers, and in his deed to B. P. Browning he conveys:

"First. 251 acres of land on Island creek (description by courses and distances following).

"Second. 288 acres of land on Island Creek (description by courses and distances following).

"Third. 335½ acres of land on Island Creek (description by courses and distances following).

"To have and to hold said real estate and premises with all the rights, title, and interest of the said J. R. Browning and the other parties to said suit, unto the said B. P. Browning, his heirs and assigns forever."

In his deed to John Lee Browning, Special Commissioner Alderson conveys:

"The following real estate, situated in the county of Logan, state of West Virginia, on Island creek (description by courses and distances following), containing 127½ acres * * * to have and to hold said real estate and premises, with all the right, title, and interest of the said John R. Browning and the other parties to said suit, unto the said John Lee Browning, his heirs and assigns forever."

In the consideration of this case it is important that we should bear in mind the distinction between an erroneous judgment and one that is void. In the first instance a judgment is held to be valid until it is set aside or reversed, if it appears that it is a judgment rendered by a court of competent jurisdiction, while, on the other hand, a void judgment is a nullity and may be assailed in any court whenever it is sought to assert a right or make a claim under it. Where one is a party to a suit and feels that his rights are prejudiced by any judgment or decree thereof, he may move in the court wherein such judgment or decree is obtained to vacate or set aside such decree or judgment, and has the right to file exceptions to any ruling that may be made by such court, and have the same considered on appeal and determined in the controversy then pending; and, under such circumstances, where one fails to avail himself of the opportunity thus afforded him to assert his rights, such failure on his part (unless it be an

exceptional case) must necessarily be attributed to a failure on his part to exercise that diligence which is required of a litigant. This is a wise rule, and without the enforcement of it there would be no end to litigation. It is the policy of the law to avoid multiplicity of suits and to secure a speedy and final determination of controversies, and this can only be accomplished by a strict observance of the well settled rule in this respect. Of course, where a judgment is rendered by a court without jurisdiction of the subject-matter, the parties affected thereby are, as we have said, permitted to attack such proceedings at any time upon the theory that such judgments are not binding in their character and may be disregarded.

In the case of Lancaster v. Wilson, 27 Grat. (Va.) 624, the court clearly defines the rule to be as follows:

"This is the settled doctrine of the courts. It is not merely an arbitrary rule of law, established by the courts, but it is a doctrine founded upon reason and the soundest principles of public policy. It is one which has been adopted in the interest of the peace of society, and the permanent security of titles. If after the rendition of a judgment by a court of competent jurisdiction, and after the period has elapsed when it becomes irreversible for error, another court may in another suit inquire into the irregularities or errors in such judgments, there would be no end to litigation and no fixed established rights. A judgment, though unreversed and irreversible, would no longer be a final adjudication of the rights of litigants, but the starting point from which a new litigation would spring up, acts of limitation would become useless and nugatory, purchasers upon the faith of judicial process would find no protection, every right established by a judgment would be insecure and uncertain, and a cloud would rest upon every title."

The foregoing is a clear and concise statement of the rule, as well as the reasons therefor. The plaintiff in error cannot be heard to say that he was not afforded an opportunity to assert his claim in the proceeding which he now seeks to avoid by a collateral attack. When he should have spoken, he remained silent, and thus, by his conduct, acquiesced in the sale of the property, which sale, in pursuance of legal proceedings, was unconditional, and the deeds made in pursuance thereof had the effect of vesting the purchaser with a fee-simple title to the premises in question.

In addition to the instructions given by the court, which we have quoted, the court refused to give certain instructions tendered by the plaintiff. We have carefully considered the various cases relied upon by the plaintiff in error, and are of opinion that they do not apply to the case at bar; and, in view of the facts, as well as the law pertaining to this controversy, we feel that the court committed no error in refusing to give the instructions asked for by the plaintiff below and that the instructions submitted by the court to the jury were eminently proper.

For the reasons herein stated, the judgment of the lower court is affirmed.

Affirmed.