Peelle, Ch. J.,
delivered the opinion of the court:
■ The question for decision arises on the defendants’ demurrer to the petition on the ground that the facts averred do not constitute a cause of action. The question presented by the demurrer is, Did the parties by the contract sued on intend it to be an entire or a separable one?
The work authorized by the act of March 2,1907 (34 Stat. L., 1073, 1075), was the improvement of Newport Harbor, B. I. In response to the advertisement therefor the claimant’s bid was received and accepted, and on December 9, 1907, it entered into the contract annexed to and made part of the petition, Whereby it obligated itself to excavate, as estimated in the specifications, 582,000 cubic yards of material, scow measurement, at 22 cents per cubic yard. Ten percent of the amount earned was to be deducted from the monthly payments until the same should equal $10,000. Of the material to be excavated it was estimated that about 222,000 cubic yards were to be in making the channel leading *160 through the harbor 18 feet deep at mean low tide and 150 feet wide, to be completed on or before June 80, 1908, and the remainder, estimated to consist of about 860,000 cubic yards, in extending the 13-foot anchorage area to the harbor line along the south side of the channel, to be completed on or before December 31, 1909.
Upon notice of the approval of the contract and within the time therein fixed the claimant commenced work and, as averred, completed the two areas within the time agreed upon respectively, no final inspection being made or demanded until the completion of the entire work, when the Government made final inspection of both areas and settled with the claimant upon'the basis thereof, deducting, as averred, the sum of $10,919.04 for 49,632 cubic yards over-depth dredging in said two areas, of which sum so deducted $7,741.58 claimed in this action was for 35,189 cubic yards overdepth dredging in the 18-foot channel way, against which deduction the claimant, as averred, then and there protested in writing. Hence this action.
The quantity of overdepth dredging in the two areas at the time the final inspection was made is not controverted by the averments of the petition, nor is any claim made for overdepth dredging the 13-foot anchorage area.
The claimant contends that the two areas to be dredged were separate and distinct pieces of work, done at different times, the unit price for which was apportionable to each, and that, therefore, the contract was a separable one, entitling the claimant to a final inspection of the 18-foot channel way within a reasonable time after its completion and before the completion of the 13-foot anchorage area.
In support of its contention the claimant, among other things, avers that the dredging of the 13-foot anchorage area was. not contemplated until after the 18-foot channel way had been completed, inspected, and accepted, for the purpose of determining the amount of overdepth dredging, as well as the amount due for the work done; that though the officers of the Government accepted the 18-foot channel way the work was not finally inspected until after the inspection and acceptance of the 13-foot anchorage area, when final inspection of the entire work was made, and the overdepth *161 dredging in the two areas was thereby disclosed; that though no demand was made therefor the failure of the Government to make final inspection of the 18-foot channel way within a reasonable time after its completion and before the completion of the 18-foot anchorage area was unreasonable and in violation of the claimant’s rights under the contract, by reason of which, it is averred, the Government is estopped from making the deduction for overdepth dredging in the 18-foot channel way.
The averments of the petition so far as material and not in conflict with the contract and specifications must, for the purposes of the demurrer, be taken as true.
Paragraphs 2 and 9 of the contract provide:
“2. All materials furnished and work done under this contract shall, before being accepted, be subject to a rigid inspection by an inspector appointed on the part of the Government, and such as do not conform to the specifications set forth in this contract shall be rejected. The decision of the engineer oflicer in charge as to quality and quantity shall be final.
“ 9. It is further agreed by and between the parties hereto that until final inspection and acceptance of, and payment for, all of the material and work herein provided for, no prior inspection, payment, or act is to be construed as a waiver of the right of the party of the first part to reject any defective work or material or to require the fulfillment of any of the terms of the contract.”
Paragraph 22 of the specifications provides:
“ The depth of cutting in the channel will be from 0 to 3 feet; in the anchorage area from 2 to 10 feet. The finished work must be of the full prescribed depth, and no allowance for overdepth exceeding 1 foot will be made. If over-depths greater than allowed are dredged, the excess will be measured in place and increased by oné-fourth and deducted from the scow measurement.”
How the officers of the Government could have accepted the 18-foot channel way as averred before final inspection in the face of paragraph 9 of the contract set out above is not shown other than by the averment, which is clearly in *162 conflict therewith. This brings us to the legal question involved.
In the construction of contracts the intention of the parties thereto must be inquired into, and such intention effectuated if not contrary to law or public policy; and “ if the language is clear and unambiguous it must be taken according to its plain meaning as expressive of the intention of the parties, and under settled principles of judicial decision should not be controlled by the supposed inconvenience or hardship that may follow from such construction.” (Loud v. Romono Land and Water Company, 153 U. S., 564, 576.) Nor is the court limited to any particular provision, but must embrace within its construction the entire contract.
As the parties competent to contract are tile best judges of their motives their contract should be construed not only in the light of the circumstances under which the same was signed but in harmony with their conduct in performance. (Bell v. Bruen, 1 How., 169, 186; Chicago, R. I. & P. R. R. Co. v. Denver & R. G. R. R. Co., 143 U. S., 596, 609.) In other words, the court in the case of ambiguous language should endeavor to ascertain the situation of the parties and their interpretation, if añy, of the contract for the purpose of determining their intention. (Topliff v. Topliff, 122 U. S., 121, 131.) This, however, does not mean that where there is no ambiguity in provisions standing alone they are not subject to interpretation in connection with doubtful provisions to ascertain the meaning of the entire contract. (O'Brien v. Miller, 186 U. S., 287, 297.) And while contracts requiring construction should be construed most strongly against the party preparing the same, the other party is not thereby relieved from performance on his part, though he may not have read the contract. (Upton v. Tribilcock, 91 U. S., 45, 50.)
“The question whether the contract is entire or divisible, in respect of the question of payment of the consideration, can not be solved by the application of any fixed legal standard. * * * It is quite as much, as a rule, a question of fact as of law, particularly where the terms of the agreement rest in parol.” (State v. Davis, 53 N. J. L., 144, 147.)
*163 Nor will the divisibility of the subject matter control in ascertaining the intention of the parties. (Shinn v. Bodine, 60 Pa. St., 182, 185, quoted in Easton v. Jones, 193 Pa. St., 141, 149.)
The present case is very similar to that of Quigley v. De Hass (82 Pa. St., 267, 273), where, in considering the question of an entire or severable contract, the court said:
k£ In any view, this contract must be taken as entire. It was designed to accomplish a single object, to wit: It was one job, though made up of several items; there was one price, though for convenience, because the work was to be paid for as it progressed, it was apportioned to the several items. Even this apportionment must be taken as inseparable from the whole work, for it is more than probable, for instance, the price of $1,400 for building each dam was a value put upon such dams as part of the whole job, rather than separate isolated items; for the dams would be worth little or nothing with the remainder of the creek unimproved.”
So in the present case the two areas were a part of the same project, the improvement of the harbor, and constitute the one object in view, each being essential to the other to make it a completed job under the act authorizing the work to be done. The Comptroller of the Treasury seems to have taken the same view in a similar case, where the work was to be done at different places. (11 Compt. Dec., 326.)
In the light of the adjudications referred to, how stands the present case? The act of Congress, the advertisement, the specifications, and the contract all refer to the single project of improving the harbor at Newport. Under the act the Secretary of War was given authority to have the work done under one or more contracts, and he therefore might have let the work under two or more contracts; but he choose to have the work done under one contract, wherein the contractor obligated himself to furnish the necessary plant and equipment to “ do all the work of dredging required in improving harbor at Newport, II. I., in accordance with the specifications hereunto attached.”
True, the specifications (14, 19, and 21) refer to the work as embracing two areas, estimating the aggregate of material to be dredged therefrom as well as the amount to be *164 dredged from each, while the contract (paragraph 1) refers to the work of improving the harbor at Newport, It. I., in accordance with the specifications and gives only the aggregate amount of material to be dredged, at 22 cents per cubic yard, scow measurement. The contract further provides (paragraph 2) that before any work is accepted all materials furnished and work done shall be subject to a rigid inspection by a Government inspector and that such as do not conform to the specifications shall be rejected, the decision of the engineer officer both as to quality and quantity to be final.
The provisions estimating the amount of material to be dredged from each area and to be completed at different times at the unit price of 22 cents per cubic yard, payable monthly as the work progressed, less 10 per cent thereof to be deducted as aforesaid, would seem to make a prima facie separable contract; but read in the light of other provisions of the contract, and particularly of paragraph 9 making final inspection of all the material the basis for final acceptance and payment, the contrary appears. That is to say, the language of that paragraph is more applicable to the contract as an entire than as a severable one.
Construing the contract as a whole in the light of the act of Congress, the advertisement, and the work to be done, it is manifest that it was not within the minds of the parties at the time of the signing of the contract that the same should be a separable one; and this is borne out not only by the language of the contract but by the conduct of the parties during performance, as no final inspection was made by the defendants or demanded by the claimant of the 18-foot channel way until the work of both areas was completed, and this is doubtless what was contemplated by paragraph 9 of the contract; nor was any demand made for payment of the percentages retained on account of said work. The time fixed for beginnig the work applies to both as a whole. No action could have been maintained to recover the percentages retained on the 18-foot, channel way until the whole was completed by the claimant or, in its default, by the Government, and then only in case any balance remained to the credit of the claimant. This is borne out by the fourth paragraph of the contract giving the Government *165 the right in case of such default to withhold all money then due, including retained percentages to be applied in payment of the remainder of the work and the claimant to be chargeable with any cost thereof in excess of the price stipulated to be paid in the contract. The 10 per cent retained was by way of indemnity to the Government for full performance of the entire contract.
Surely if the parties, or either of them, had regarded the contract as a severable one they would, during the performance thereof, have said or done something to indicate it before the final inspection of the two areas. The protest in writing then made against the deduction, if of value, can not be held to relate back to the failure of the Government to make final inspection of the 18-foot channel way at the time of its completion. To do so would be allowing the claimant to take advantage now of what it omitted to do then. In this connection it must be conceded that had a protest then been made it would have challenged the rightfulness of the Government’s failure to then make final inspection of the 18-foot channel way to determine the amount due for said work. But this was not done, nor does it appear from the averments of the petition that either party by its conduct at any time regarded the contract as sever-able until after the final inspection of both areas and the deduction for over-depth dredging had been made.
Therefore, unless the contract imposed upon the Government the obligation to make final inspection of the 18-foot channel way at the time of or soon after its completion, and its failure or refusal to do so thereby misled the claimant to its hurt, negligence on the part of the officers of the Government, made the basis of estoppel, can not be imputed.
The officers and agents of the Government are such by virtue of the law and thereby their duties are defined, beyond which they can not go in their official acts, of which parties dealing with them in behalf of the Government are bound to know. This does not mean, however, that where a legal or contractual obligation rests upon the Government it may not be held liable for the negligence of its officers, charged with its execution, in their performance or failure to perform. That is to say, where the obligation to perform *166 is imposed and the officers of the Government intrusted therewith refuse or neglect to carry it out to the injury of the other party the Government may be estopped or liability may arise as for a breach of contract. (Continental Bank v. Bank of the Commonwealth, 50 N. Y., 575, 583.)
In order to constitute an estoppel against a party growing out of his silence or acquiescence it must appear that the fact upon which the estoppel is based was known to him. Here it is claimed the fact was agreed upon in advance; and if so, it is an estopped by contract and the parties are estopped from asserting the contrary. (Bricker v. Stroud, 69 Mo. App., 183, 188.) But another rule equally well known is that there must be mutuality, so that the acts of the party estopped must result in injury to the other party. In other words, an estoppel can only be maintained on the ground that by the failure of one party another has been induced innocently or ignorantly to change his position for the worse. (Armfield v. Moore, 44 N. C., 157, 163; Shaw v. Spencer, 100 Mass., 382, 395.)
How can it be said that the omission of the Government to make final inspection of the 18-foot channel way soon after its completion caused the claimant to change its position for the worse ? For if we were to assume that the contract was a separable one doubtless in the nature of things there was less overdepth dredging found at the time the final inspection was made than there would have been had the 18-foot channel way been finally inspected when completed a year or more prior thereto. So the natural action of the water between the period of completion and final inspection of the 18-foot channel way was more likely to be beneficial than harmful to the claimant.
But however this may be we must hold that the contract is entire; and as we base our decision on the language of the contract and specifications and the conduct of the parties indicating their interpretation thereof contrary to the claimant’s view herein we need not further review the authorities cited by the claimant other than to say that they are not in material conflict herewith.
The demurrer must, therefore, be sustained, which is accordingly done and the petition dismissed.