MATILDA OWEN v. ELIJAH NEEDHAM et al.

(Filed 13 November, 1912.)

1. Partition—Parties—Title.
   A party to proceedings to partition lands cannot claim title to the land allowed to another party under a grant from the State taken out after the proceedings, and the principles announced in *Carter v. White*, 134 N. C., 466, have no application to this case.

2. Partition — Parties — Estoppel—State's Lands—Grants—Vacant and Unappropriated—Titles.
   J. and his wife were parties to proceedings to partition certain lands, and it appeared by the petition that A. died in 1847, seized and possessed of the lands, and that the wife of J., and others, were his children and heirs at law, and as such were tenants in common thereof. Partition was made and finally adjudicated in 1849: *Held*, that J. and those claiming under him were estopped to deny that A. was the owner of the lands in 1847, and that as the lands were not vacant or unappropriated in 1850, any grant that J. may have obtained at that time from the State to the lands were invalid to pass title to any one claiming thereunder.

APPEAL by plaintiff from *O. H. Allen, J.*, at April Term, 1912, of MONTGOMERY.

This is an action to recover possession of land.

The plaintiff claims under a deed from Alexander Jordon, who procured grants from the State for the land in controversy in 1850, 1851, and 1854.

The defendant claims as the heir of Sarah Jordon, who was the first wife of Alexander Jordon, and specially pleads that the plaintiff is estopped to claim title to said land.

The plaintiff introduced evidence tending to establish her title, and relied on said grants to Alexander Jordon as a necessary part of her title.

The defendant then introduced a partition proceeding, of date 1849, in which the land in controversy was allotted to Sarah Jordon, and it was admitted that the defendant was her heir.

Alexander Jordon and Sarah Jordon were parties to said partition proceeding, and they alleged in their petition that George Allen died in 1847, seized and possessed of certain lands, and that Sarah Jordon and others named were his children and heirs, and, as such, tenants in common of said land, and partition was made in accordance with the petition.

His Honor then intimated that he would instruct the jury that the plaintiff was estopped if it was found as a fact that Alexander Jordon was a party to the partition proceeding and that the land in controversy was therein allotted to Sarah Jordon, and in deference thereto the plaintiff submitted to judgment of nonsuit and appealed.

*Howell Hurley and John T. Brittain for plaintiff.*
*J. A. Spence and Jerome & Price for defendant.*

ALLEN, J. The case of *Carter v. White,* 134 N. C., 466, is not decisive of this controversy, because no land was allotted in the partition proceeding to Alexander Jordon, under whom the plaintiff claims, and she does not derive her title through that proceeding, but there is another principle which is conclusive against the plaintiff.

Alexander Jordon was a party and joined in the partition, which alleged that George Allen died in 1847, seized and possessed of the land described, and that the petitioners were tenants in common of the same as his heirs, which was equivalent

to an allegation of an estate of inheritance in George Allen in 1847, and following the petition there was an adjudication of title accordingly in 1849.

This, according to all authorities, estops all parties to the proceeding, including the grantor of the plaintiff, to deny that in 1847 George Allen was the owner of the land described (*Armfield v. Moore*, 44 N. C., 161; *Coltraine v. Laughlin*, 157 N. C., 287), and if so, it was not vacant and unappropriated land, which alone is the subject of entry and grant, and the adjudication of necessity passed on this precise point, and the plaintiff is now seeking to establish that the land was vacant and unappropriated land in 1849, and that the State did not part with title until 1850, 1851, and 1854.

The two positions are irreconcilable, and if we give any effect to the adjudication, we must hold that Alexander Jordon is estopped to allege that the title to the land in controversy was in the State at the time his grants were issued, and that the plaintiff, being a privy in estate, is bound by the estoppel. *Green v. Bennett,* 120 N. C., 394.

In the *Armfield case, Chief Justice Pearson* discusses the effect of an adjudication upon the parties and the important part it plays in the administration of justice. He says: "According to my Lord Coke, an estoppel is that which concludes and 'shuts a man's mouth from speaking the truth.' With this forbidding introduction, a principle is announced which lies at the foundation of all fair dealing between man and man, and without which it would be impossible to administer law as a system. The harsh words which the very learned commentator upon Littleton uses in giving a definition to this principle are to be attributed to the fact that before his day 'the scholastic learning and subtle disquisition of the Norman lawyers' (in the language of Blackstone) had tortured this principle so as to make it the means of great injustice, and the object of my Lord Coke was to denounce the abuse, which, he says, had got to be 'a very cunning and curious learning,' and was 'odious,' and thereby restore the principle and make it subserve its true purpose as a plain, practical, fair, and necessary rule of law. The meaning of which is, that when a fact has been agreed on, or

decided in a court of record, neither of the parties shall be allowed to call it in question and have it tried over again at any time thereafter, so long as the judgment or decree stands unreversed, and when parties, by deed or solemn act, *in pais*, agree on a state of facts, and act on it, neither shall ever after-wards be allowed to gainsay a fact so agreed on, or be heard to dispute it; in other words, his mouth is shut, and he shall not say that is not true which he had 'before in a solemn manner asserted to be truth. For instance, one is acquitted upon the trial of an indictment, and is afterwards indicted for the same offense; he pleads *autrefois acquit*, to wit, the fact has been decided of record. Not even the sovereign can be heard to gain-say it, although there be an allegation of proof subsequently discovered. So, in a civil suit, if a fact be agreed on by the parties, or be found by a verdict, and the court acts thereon and pronounces a judgment or decree, neither party can be after-wards heard to gainsay that fact, so long as the judgment or decree stands unreversed. An allegation of the discovery of important evidence, after the admission on trial, or a suggestion that the party made the admission of record under a mistake as to his rights, cannot be listened to without upsetting the whole administration of the law as a system, and reducing it to a mere arbitrary and despotic proceeding, by which the court, in each case, according to its views of the circumstances, may see fit to decide, in the one way or the other."

And in the *Coltraine case Justice Hoke* declares the same principle, as follows: "It is well recognized here and elsewhere that when a court having jurisdiction of the cause and the par-ties renders judgment therein, it estops the parties and their privies as to all issuable matter contained in the pleadings, and though not issuable in the technical sense, it concludes, among other things, as to all matters within the scope of the pleadings which are material and relevant, and were in fact investigated and determined on the hearing. *Gillam v. Edmonson*, 154 N. C., 127; *Tyler v. Capeheart*, 125 N. C., 64; *Tuttle v. Har-rell*, 85 N. C., 456; *Fayerweather v. Ritch*, 195 U. S., 277; *Aurora City v. West*, 74 U. S., 82, 103; *Chamberlain v. Gail-lard*, 26 Ala., 504; 23 Cyc., pp. 1502-4-6."

If the doctrine is ever to be applied, it should be in a case like this, where the husband, while living with the wife, takes out a grant for her land.

We are therefore of opinion, upon reason and authority, that the plaintiff is estopped as a privy in estate to Alexander Jordon to maintain that Alexander Jordon acquired title to the lands in controversy under the grants issued to him, and so hold.

Affirmed.