JARRELL et al. v. COLE et al. †

(Circuit Court of Appeals, Fourth Circuit. May 5, 1914.)

No. 1244.

1. ATTORNEY AND CLIENT (§ 70*)—AUTHORITY—PRESUMPTIONS.

Where, in a suit against the administrators and heirs of a decedent to obtain a decree for the sale of real estate to pay debts, exceptions were filed to a commissioner's report by one signing himself "attorney for widow and heirs," the legal presumption is that he was the authorized attorney for the widow and heirs of the decedent.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 95; Dec. Dig. § 70.*]

2. JUDGMENT (§ 489*)—COLLATERAL ATTACK—WANT OF JURISDICTION.

Where a court has jurisdiction of the subject-matter and of the parties, its judgment cannot be collaterally attacked on the ground of its want of jurisdiction to grant the relief adjudged, because of error, insufficiency of recitals in the record, or any defect or irregularity in the pleadings or proceedings.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 924, 925; Dec. Dig. § 489.*]

3. JUDICIAL SALES (§ 47*)—DECREE FOR SALE OF DECEDENT'S LANDS TO PAY DEBTS—COLLATERAL ATTACK.

A decree in a creditors' suit against the administrators and heirs of a decedent, under which real estate belonging to the estate was sold to pay debts, *held* good as against a collateral attack made after 35 years.

[Ed. Note.—For other cases, see Judicial Sales, Cent. Dig. § 89; Dec. Dig. § 47.*]

Appeal from the District Court of the United States for the Southern District of West Virginia, at Charleston; Benjamin F. Keller, Judge.

Suit in equity by Paris Jarrell and others against James O. Cole and Clinton Crane. Decree for defendants, and complainants appeal. Affirmed.

John E. Blake, of Madison, W. Va. (Maynard F. Stiles, of Charleston, W. Va., on the brief), for appellants.

Cary N. Davis, of Huntington, W. Va (F. P. Murphy, of Madison, W. Va., and Campbell, Brown & Davis, of Huntington, W. Va., on the brief), for appellees.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† Rehearing denied June 2, 1914.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

KNAPP, Circuit Judge. This is an appeal from a decree of the District Court dismissing on demurrer the original and amended bills filed herein to set aside certain deeds as clouds upon the title of the lands therein described, which are alleged to be owned by the appellants. The material facts appear to be these:

Simeon Jarrell died intestate, in 1862, seised of several tracts of land, aggregating some 2,300 acres, in Boone county, W. Va., and leaving surviving him his widow and seven children, three sons and four daughters. The appellants are his heirs at law and those claiming under them. In 1871 a chancery suit, in the nature of a creditors' bill, was brought in the circuit court of Boone county for the purpose of subjecting the real estate of Simeon Jarrell to the payment of his debts. The facts concerning this suit, and the contentions of appellants in regard thereto, will be more fully stated as this opinion proceeds. In September, 1872, none of the parties having answered, the cause was referred to a commissioner in chancery, who made a report in February following. Upon the petition of two of the sons, the matter was recommitted to the commissioner, and he made a further report in September, 1873. Something over a year later exceptions to this report were sustained, and another commissioner appointed, one William Thompson, who afterwards made a report which was confirmed, save in a respect not now important, in September, 1875. Meanwhile there was an assignment of dower to the widow and some 300 acres set off to her. Subsequently, in May, 1876, a decree was entered in the chancery suit, which directed a sale of the lands in question unless certain debts therein specified were paid "within 30 days after the rising of this court." In accordance with this decree, the lands were sold within the following year and deeds executed to the purchasers. Under these purchasers, or their successors in title, the appellees herein assert their claims to the timber heretofore conveyed to them.

As above stated, this suit seeks to set aside the various conveyances mentioned as clouds upon the title, and also to annul the decree of the Boone county circuit court and all proceedings thereunder, on the theory that this decree is void and of no effect, because the court was wholly without jurisdiction to make it. It is not denied and cannot be doubted that the circuit court had plenary jurisdiction of the subject-matter of the suit, and also of the several parties thereto, if they were properly served with process, or came in by voluntary appearance. The charge that the decree is a nullity rests, therefore, not on any inherent lack of judicial power, but on the alleged failure of the bill of complaint to set forth facts upon which judicial power could be exerted.

This makes it necessary to examine the bill in the light of appellants' contention. The caption of the bill reads as follows:

"The Bill of Complaint of Nelson Hill, Adm'r of George Hill, Dec'd, v. Floyd C. Jarrell, Administrator, and Virgin Jarrell, Administratrix of Simeon Jarrell, Dec'd, and in Their Own Right, H. H. Hopkins, Paris Jarrell, Simeon R. Jarrell, Charles N. Mullins and Acintha Mullins, His Wife, Henry C. Mullins and Caroline Mullins, His Wife, Floyd White and Emily White, His

Wife, David Mullins, and Harriet Mullins. To the Hon. C. W. Smith, Judge of the 12th Judicial Circuit."

The bill then alleges that a judgment for the use of plaintiff had been recovered against the administrator and administratrix of Simeon Jarrell, that execution had been issued on such judgment and returned unsatisfied, and that copies of the judgment and execution marked as exhibits were filed with and asked to be made a part of the bill. It is further averred that Simeon Jarrell died intestate, seised and possessed of certain tracts of land, a list of which is given, that the title thereto appears to be vested in his heirs, and that the personal estate of the decedent is insufficient to pay the plaintiff's judgment. The prayer of the bill is that the real estate of Jarrell be decreed to be sold to pay the aforesaid judgment and costs of suit, that leave be granted to other creditors of the deceased "to come in and participate in the advantages of this suit," that a commissioner be appointed to ascertain the claims of the several creditors, and to perform such other and further order of the court as may be required in the premises, and for general relief.

It appears that the persons named in the caption of the bill included all the heirs at law then living, and that each of them was served with a summons or notice to appear before the judge of the circuit court, at rules to be held on the first Monday of the following August, "to answer a bill in chancery exhibited *against them* in our said court by Nelson Hill, administrator of George Hill, deceased."

The first and principal contention seems to be that this bill failed to confer jurisdiction to sell the lands in question, because it did not make the heirs of Simeon Jarrell, who became the owners on his decease, parties to the suit, and therefore did not bring them or the lands they inherited before the court, and because it did not set up a claim or show the existence of debts for which the estate of the decedent was liable, or allege the insufficiency of personal property belonging thereto.

To the objection that the heirs were not made parties, we think convincing answer is given by the West Virginia Code of 1868 (chapter 125, § 37), which outlines the form in which the plaintiff's bill may be framed, and also provides that:

"Every person designated in the caption of such bill as a defendant shall be a defendant therein, without a prayer that he be made such, and shall be required to answer the bill in the same manner and to the same extent as if he were therein called upon to do so."

We discover nothing in the bill under review which prevents the application of this provision, and are therefore of opinion that it operated to make the persons named in the caption parties to the suit and bring them properly before the court.

It is further said that the bill contains no averment which connects these persons with the subject-matter of the suit, or shows that anything to be done therein would affect their interests as owners of the lands in question or otherwise. But it is alleged that Simeon Jarrell died intestate, that he was possessed of certain lands which are described by tracts, and that such lands "appear vested" in his heirs at law. It is not in terms stated that the persons sued are the heirs of the de-

cedent, but this would seem to be the natural and reasonable inference from the express allegations. If the bill be otherwise sufficient, we are persuaded that the failure to show by specific averment the identity between the named defendants and the heirs of the intestate cannot be regarded as an omission which deprived the court of jurisdiction.

It is also asserted that there is no showing of any debt or claim for which the estate of the decedent was liable, or for which the real estate he left could be sold. But the bill avers that plaintiff had recovered a judgment against the personal representatives of Jarrell's estate, that execution had been issued and returned unsatisfied, and that the personal property was insufficient to pay this judgment. True, it is not alleged that the personal property was insufficient to pay all the debts of the estate; but the prayer for relief asks that leave be granted to creditors generally to come in, and that a commissioner be appointed to ascertain their several claims. If these allegations, coupled with the others mentioned, did not suffice to give the court jurisdiction, it must be because as matter of law the judgment described in the bill is not a judgment against the estate, but only against the administrator and administratrix as individuals. But the bill states that a copy of this judgment was filed with and made a part of the same, and we think it should be presumed, for the purposes of this case, that the judgment actually rendered was a judgment against the estate. Certainly the contrary presumption is not to be indulged for the purpose of defeating jurisdiction.

[1] In this connection it seems proper to refer to the controverted appearance of the widow and heirs of Jarrell in the chancery suit. After the second report of the first commissioner was presented, and in September, 1874, exceptions to both his reports were filed, setting up in substance that the accounts of the administrators had not been settled, that the creditors had not been notified as required by statute, and that the widow had not elected whether to take her dower in money or land. These exceptions are entitled in the case and signed by "Laidley, Atty. for Widow and Heirs." It is true that this recital does not specify whose widow or what heirs Laidley assumed to represent; but the only rational inference, in view of the objections stated, is that he was the authorized attorney of the widow and heirs of Jarrell, and this in our opinion is the legal presumption. Even if it should be held that this appearance, to call it such, was ineffectual to cure any defects in the bill of complaint, which we are not prepared to concede, it does at least indicate that all the parties in interest were aware of the nature of the suit and the purpose for which it was brought.

[2] The courts go to great lengths in upholding judgments and decrees which are assailed in collateral proceedings for want of jurisdiction to render them. Especially is this so where, as in the case at bar, the adjudicating tribunal had jurisdiction of the parties and the subject-matter. Indeed, it is little less than surprising to note the omissions and defects, the lack of material averments and other irregularities, which have been held insufficient to impeach jurisdiction. This branch of the law is exhaustively treated and almost numberless authorities cited in Van Fleet on Collateral Attack. In the course of an extended

discussion of the questions here involved, the learned author sets forth the principles which have been long established and refers to numerous cases which illustrate their application. For example, in section 61, p. 79, he says:

"The rule is this: Can it be gathered from the allegations, either directly or inferentially, that the party was seeking the relief granted, or that he was entitled thereto? If it can, the allegations will shield the judgment from collateral attack. All the cases agree that if the allegations tend to show, or colorably or inferentially show, each material fact necessary to a cause of action, they will uphold the judgment collaterally."

Further along in the same section is the following:

"These illustrations show that there is no connection between jurisdiction and sufficient allegations. In other words, in order to 'set the judicial mind in motion,' or to 'challenge the attention of the court,' it is not necessary that any material allegation should be sufficient in law, or that it should even tend to show facts that are sufficient. If that were the rule, the absence of any material allegation would always make the judgment void, because it cannot be said that such a complaint has any tendency to show a cause of action. It will be seen from the cases about to be cited that, when the allegations are sufficient to inform the defendant what relief the plaintiff demands—the court having power to grant it in a proper case—jurisdiction exists, and the defendant must defend himself. * * * Hence I conclude that allegations immaterial and wholly insufficient in law may be sufficient 'to set the judicial mind in motion,' and to give a wrongful but actual jurisdiction, which will shield the proceedings from collateral attack."

And again, in section 256:

"If the object of the petitioner can be ascertained from the allegations, no matter how defective they are or how many necessary ones are omitted—the court having power to grant the relief sought, and having the parties before it—the judgment is not void. * * * A judgment is never void for defects in a petition which is amendable. * * * The cases all agree that if the allegations tend to show, or colorably or inferentially show, each material fact necessary to constitute a cause of action, they will shield the judgment from collateral attack."

In support of these propositions we refer here to a few decisions which are especially applicable to the pending case:

In Grignon's Lessee v. Astor, 43 U. S. (2 How.) 319, 339 (11 L. Ed. 283), the court says:

"The granting the license to sell is an adjudication upon all the facts necessary to give jurisdiction, and whether they existed or not is wholly immaterial, if no appeal is taken. The rule is the same, whether the law gives an appeal or not; if none is given from the final decree, it is conclusive on all whom it concerns. The record is absolute verity, to contradict which there can be no averment or evidence; the court having power to make the decree, it can be impeached only by fraud in the party who obtains it. [United States v. De la Maza Arredondo] 6 Pet. 729 [8 L. Ed. 547]. A purchaser under it is not bound to look beyond the decree; if there is error in it, of the most palpable kind, if the court which rendered it have, in the exercise of jurisdiction, disregarded, misconstrued, or disobeyed the plain provisions of the law which gave them the power to hear and determine the case before them, the title of a purchaser is as much protected as if the adjudication would stand the test of a writ of error."

In Florentine v. Barton, 69 U. S. (2 Wall.) 210, 217 (17 L. Ed. 783), which seems very much in point, the following appears:

"In making the order of sale, the court [is] presumed to have adjudged every question necessary to justify such order or decree, viz., the death of the owner, that the petitioners were his administrators, that the personal estate was insufficient to pay the debts of the deceased, that the private act of assembly, as to the manner of sale, was within the constitutional power of the Legislature, and that all the provisions of the law, as to notices which are directory to the administrators, have been complied with. 'The court having a right to decide every question which occurs in a cause, whether its decision be correct or otherwise, its judgment, until reversed, is binding on every other court.' The purchaser, under such a sale, is not bound to look further back than the order of the court, or to inquire as to its mistakes."

In Kirk v. Hamilton, 102 U. S. 68, 78 (26 L. Ed. 79), the court says:

"He knew, as we have seen, that the defendants claimed the property under a sale made in an equity suit to which he was an original party. The sale may have been a nullity, and it may be that he could have repudiated it as a valid transfer of his right of property. Instead of pursuing that course, he, with a knowledge of all the facts, appeared before the auditor and disputed the right of certain creditors to be paid out of the fund which had been raised by the sale of his property. He forbore to raise any question whatever as to the validity of the sale, and by his conduct indicated his purpose not to make any issue in reference to the proceedings in the equity suit. Knowing that the defendants' claim to the premises rested upon that sale, he remained silent while the latter expended large sums in their improvement, and, in effect, disclaimed title in himself. He was silent when good faith required him to put the purchaser on guard. He should not now be heard to say that that is not true which his conduct unmistakably declared was true, and upon the faith of which others acted."

In Lemmon v. Herbert, 92 Va. 653, 24 S. E. 250, it is said:

"The court here had the power to decide whether the case made by the bill was within the jurisdiction of a court of equity, and, having proceeded in the case to a final decree, must of necessity have determined that question in favor of its jurisdiction. It may have erred in its decision, but such error would not avoid its decree. The decree would merely be erroneous, but conclusive until reversed or vacated. This court could not determine whether the case was one of equitable jurisdiction or not without an inquiry into the facts; and, where inquiry is necessary, a decree, however erroneous, is not void" (citing several decisions).

And the same doctrine is announced, with convincing argument and citations, in a recent case in this court. Wood v. Browning, 176 Fed. 273, 100 C. C. A. 161.

We have carefully examined the dozen or more West Virginia cases referred to in the briefs of appellants' counsel, and find nothng at variance with the views herein expressed, or the principles laid down in the opinions from which we have quoted. These cases certainly afford no indication of a different rule in that state from the rule which prevails in other jurisdictions. With a single exception (Oneal v. Stimson, 61 W. Va. 551, 56 S. E. 889), all the West Virginia decisions cited, which have any bearing upon the present controversy, are cases in which direct appeal of some sort was taken in the original suit. The Oneal Case was brought to partition lands in which an interest was owned by certain infants, who were not made parties or served with process. For that reason it was held that the sale ordered was not binding upon them, and that they could maintain an action against the purchasers. In this case, as we hold, all the persons who then owned the lands in question were made parties defendant and properly brought into

the Circuit Court; and, since that court had full jurisdiction of these parties and of the subject-matter involved, we are of opinion that the allegations of the bill, however incomplete or defective, were sufficient to authorize the court to proceed with the case, and to protect its action from collateral attack. In short, we are persuaded that the appellants cannot maintain this suit upon the theory that the court which directed the sale was without jurisdiction.

The further contention is made that, even if the bill of complaint was sufficient to give the Circuit Court jurisdiction, the decree of sale is nevertheless a nullity, because it does not establish any debts or claims against the estate or determine the want of personal property to pay the claims set forth in Commissioner Thompson's report. This contention is believed to be answered by what has already been said, and the argument need not be repeated. It may, however, be observed of this report, which was confirmed by the court, that it indicates a painstaking attempt to set forth the actual condition of the estate at that time, for it includes, among other things, a list of the unpaid claims and a schedule of the several parcels of land owned by decedent, with the estimated value of each parcel. It is, perhaps, also worthy of note that the aggregate amount of claims listed approached the gross valuation of all the real estate sold, and considerably exceeded the sum obtained therefor after apparent effort to get a larger price.

[3] The decree of sale may be inartificially drawn, in the estimation of trained and experienced lawyers, but it carries on its face evidence that it was not carelessly prepared. To our minds the inaccuracies shown are matters of form, rather than of substance, and we are constrained to hold that it was adequate to accomplish its intended purpose. It is one thing to say that a decree may be set aside on direct appeal, because it fails to recite jurisdictional facts, or is otherwise defective; it is quite another thing to say that such a decree is equally open to attack in a collateral proceeding. Indeed, we regard the doctrine as elementary, where a court has jurisdiction of the parties and the subject-matter, and is acting within the general scope of its authority, that no collateral inquiry will be permitted respecting the regularity or sufficiency of its proceedings. And this is undoubtedly the settled law of West Virginia.

"Where a court has jurisdiction of the parties and the subject-matter in the particular case, its judgment, unless reversed or annulled in some proper proceeding, is not open to attack or impeachment by parties or privies in any collateral action or proceeding whatever." Lee v. Smith, 54 W. Va. 98, 46 S. E. 355.

It was upwards of 35 years after the sale of Simeon Jarrell's land before this suit was instituted, and that sale should not now be disturbed, except for reasons which are found to be conclusive. We are convinced that such reasons are not disclosed in the record on this appeal.

In our judgment, the case was correctly decided by the learned District Judge, and his decree will therefore be affirmed.