## EARL SIMON McCANNA v. FERN McCANNA.

(147 N. W. 718.)

Upon trial *de novo, held:*

**Decree of divorce— fraud — coercion — deceit.**

    1. That the decree of divorce heretofore entered in this action was not shown to have been obtained by fraud, coercion, or deceit.

**Evidence — sufficiency.**

    2. That the testimony upon which the said divorce was granted was sufficient to support the said decree.

**Summons and complaint — service — written acknowledgment thereof.**

    3. That the summons and complaint were duly served upon the defendant and written acknowledgment of service indorsed thereon by herself.

**Attorney — authority to appear — decree — setting aside — error.**

    4. That attorney J. J. Sampson was duly authorized by her to appear in her behalf upon the trial.

    It was therefore error of the trial court to set aside the decree.

Opinion filed May 20, 1914.

Appeal from the District Court of Ramsey County, *Cowan,* J. Reversed.

*F. T. Cuthbert* and *A. R. Smythe,* for appellant.

There is a clear and conclusive showing in the record here presented, that the trial court abused its discretion in setting aside the decree and

reopening the judgment. There was no valid ground shown or established for such action. 11 Enc. Pl. & Pr. 1170, 1180–1182, 1184–1187.

*Taylor Crum,* for respondent.

The discretionary power of the court to reopen judgments will not be interfered with except in clear cases of abuse. Yorke v. Yorke, 3 N. D. 343, 55 N. W. 1095; Weber v. Tschetter, 1 S. D. 216, 46 N. W. 201; Wheeler v. Castor, 11 N. D. 347, 61 L.R.A. 746, 92 N. W. 391.

Such orders are not disturbed as a rule. Pengilly v. J. I. Case Threshing Mach. Co. 11 N. D. 249, 91 N. W. 63, 12 Am. Neg. Rep. 619; 15 Enc. Pl. & Pr. 281, 282; Racine-Sattley Mfg. Co. v. Pavlicek,. 21 N. D. 229, 130 N. W. 228, and cases cited; Cline v. Duffy, 20 N. D. 537, 129 N. W. 75.

As a general rule, where the moving party makes a clear showing that he has a good cause of action or defense, on its merits, the trial court cannot, in the exercise of a sound discretion, deny to him the relief asked. Richardson v. Richardson, 4 Port. (Ala.) 467, 30 Am. Dec. 545.

The state has an interest in maintaining the *rules which have been presented* by the proper authority concerning marriages and divorces, which interest it is the duty of the courts to protect. Wiemer v. Wiemer, 21 N. D. 371, 130 N. W. 1015; Yorke v. Yorke, 3 N. D. 343, 55. N. W. 1095.

A judgment fraudulently taken may be set aside on motion. 1 Black, Judgm. 320; Yorke v. Yorke, supra; Haverty v. Haverty, 35 Kan. 438, 11 Pac. 364; True v. True, 6 Minn. 458, Gil. 315; Young v. Young, 17 Minn. 181, Gil. 153; Colby v. Colby, 59 Minn. 432, 50 Am. St. Rep. 420, 61 N. W. 460; Daniels v. Benedict, 50 Fed. 351.

The trial court found that the divorce was fraudulent, or at least one obtained through the mistake and legal inexperience of the girl,— grounds which are contemplated by our law. Rev. Codes 1905, §§ 4056, 4058, 6884; True v. True, 6 Minn. 458, Gil. 315; Mulkey v. Mulkey, 100 Cal. 91, 34 Pac. 621; Danforth v. Danforth, 105 Ill. 603; Singer v. Singer, 41 Barb. 139.

BURKE, J. Plaintiff and defendant were married February 18, 1911, and shortly thereafter went to live upon a farm owned by plaintiff's father, near Cando, North Dakota. It appears from the record that

plaintiff's parents are very well-to-do, and that plaintiff is very much addicted to drinking intoxicating liquors and gambling. The couple resided together upon the said farm until about the 9th day of October, 1911, when plaintiff brought an action for divorce. Service of the summons and complaint is admitted in writing under date of October 9, 1911, and an answer was interposed the same day, signed by J. J. Sampson, an attorney at law. On the 14th day of October, 1911, hearing was had before the Honorable John F. Cowan, Judge of the district court, upon stipulation of the parties. Findings of fact and conclusions of law favoring the plaintiff were signed by the judge the same day and filed with clerk of court May 3, 1912. Thereafter and on January 12, 1912, defendant applied to the same court to have the judgment opened upon the grounds and for the reason that the divorce "was obtained by fraud, coercion, and deceit; also on the ground that the testimony upon which said decree was granted was in part untrue and insufficient in law to authorize the court to grant such judgment and decree; also on the ground that there was no service of the summons and complaint served upon the defendant giving the court jurisdiction of the subject-matter of said action; also upon the ground that no attorney was authorized by defendant to appear or act for her in said action." In support of this motion, defendant offered her own affidavit as well as an affidavit of her sister. Plaintiff filed affidavits of himself, his father, his mother, his attorney, and the attorney who appeared for defendant. On the 30th day of November, 1912, the trial court entered an order to the effect "that the judgment and decree of divorce heretofore entered in this action, . . . be and the same is here vacated, set aside, and held for naught, and the defendant is allowed thirty days from the date of the service of this order upon plaintiff's attorney in which to plead to the complaint." This appeal is from such order. The grounds upon which the trial court granted relief are not stated in the order, so we are under the necessity of reviewing each of the grounds alleged in the motion. We are aware that trial courts are clothed with large discretionary powers in matters of this kind, and their findings should not be disturbed excepting for a clear abuse of discretion. In this case we believe the proof against the application so overwhelming that the trial court abused its discretion in making the order aforesaid.

(1) The first ground for the opening of the case is that the decree

was obtained by fraud, coercion, and deceit. The affidavits upon which the order was based are of such length that it will be impossible to reproduce them here. The affidavit of the defendant is to the effect that she and her husband, during the latter part of September, 1911, had had some unpleasant words regarding his conduct with another woman; that she had told him that if he liked this other girl so well—better than he liked his wife—that she would go away and leave him, but that the husband had begged her not to go. That shortly afterwards she went to Cando, met his father, and told him of the trouble she had had with her husband; that the father had told her the best thing to do was to separate; that he was unable to do anything towards making her husband treat her right. Affiant told him that she did not wish to leave her husband; that the next day her father-in-law came to the house and told her that the best thing to do was to go to Devils Lake and get a divorce right away, and that they finally all went there in an automobile; that her mother-in-law told her that she might just as well let him get a divorce—that he would get it anyway, but that affiant replied that there was nothing against her excepting what her husband knew before their marriage. That her father-in-law told her that if she would let her husband get a divorce he would give her half of the crops, and also help her, and see that she never wanted for anything; that thereafter they went down to a lawyer's office, who took her along into a private office and persuaded her to sign an admission of service upon summons; the nature of which, however, she alleges she did not comprehend; that thereafter the father and mother-in-law took her to a *café* for supper and told her that a divorce had been granted; that notwithstanding the divorce, her husband had continued to write loving letters to her, and that they had on several occasions cohabited as husband and wife. The letters and postal cards referred to by her are made part of the record, and contain many terms of endearment. In a supplemental affidavit, defendant claims that Attorney Sampson admitted to her that he had been employed by her father-in-law. Her sister's affidavit is to the effect that the same attorney had told her practically the same thing. The above-mentioned affidavit also contains much irrelevant matter. In passing, it will be noticed that defendant's own affidavit in many places shows that she was aware of the pendency of the divorce proceedings, and that immediately after the decree was entered she had been

28 N. D.—3.

advised of its entry by her father-in-law. Opposed to this showing are the affidavits of plaintiff and the other persons mentioned. Plaintiff states that it was at his request that his father took himself and wife to Devils Lake, but only after the defendant had agreed to separate on account of quarreling and because of the conduct of the defendant towards him. That the defendant had stated in the presence of himself and the other persons mentioned, that she was willing to admit service of the summons and complaint, and that the complaint was true with two exceptions,—one an allegation that she had threatened to poison plaintiff, and another that she had attempted to use a butcher knife on him, and that by the agreement of all parties concerned those two statements were stricken from the complaint; that during all the time defendant had known of the pendency of the divorce proceedings and that they had agreed upon a division of their property. The affidavits of the father and mother of plaintiff are to the effect that plaintiff and defendant together had informed them that they had separated, and were not going to live together longer, and requested to be taken to Devils Lake to get a divorce; and that defendant had stated to them that her husband was entitled to a divorce and that she would let him have it. They further denied having any knowledge of the details of the divorce proceedings until they reached Devils Lake, and they specifically deny that they employed Attorney Sampson or that they ever had met him or ever had known where his office was. They further state that immediately after the decree was entered, defendant told them that she was glad it was over, and glad that her husband had the divorce, but that if he ever married the other woman referred to, she would kill her. The affidavit of plaintiff's attorney fully corroborates plaintiff and his father and mother, setting out in detail the conversation had with the defendant in which she objected to that part of the complaint wherein it was alleged that she had attempted to poison her husband, and that she had assaulted him with a butcher knife; and that when those two allegations were stricken out, defendant admitted service of the same by signing her name to an admission thereof. Most convincing of all, however, is the affidavit of attorney J. J. Sampson, who made the same while aware of approaching death. He states that he was an attorney and counsellor at law, engaged in the practice at Devils Lake; that he read all of said complaint to the defendant prior to the hearing

in said action and consulted with her regarding the same. That she had objected to the two certain allegations before mentioned, and that at her request same were stricken out, whereupon she admitted service of the summons and complaint. That at that time the defendant had told him that she and her husband had agreed upon a division of property; that at her request he had appeared at the hearing for the purpose of seeing that no testimony was admitted excepting in support of the allegations in the complaint. That it was impossible for the defendant not to know the nature of the action. He denied making the statement that he had been employed by the parents of the plaintiff. He further denies being in a room with the defendant or making the statement alleged by her.

From the extracts given and from the rest of the testimony which we have carefully read and weighed, we have reached the conclusion that the decree was not obtained by fraud, coercion, and deceit. We have before us the identical affidavits that were acted upon by the trial court, and feel that he was wrong, and it is our duty to so hold.

(2) The second reason given in the notice to vacate is that the testimony upon which the decree was granted was in part untrue and insufficient to authorize the court to grant such judgment and decree. The testimony is set out in the record, but is too long to be reproduced. The husband testified that his wife had found fault and criticized him, that she had fits of violent temper on an average of once a week, during which she struck and threw things at him; that she had struck him probably eight or ten times; that he had given her no provocation, and had endeavored in every way to live with her peacefully and harmoniously, and this testimony was corroborated by a witness who says that he heard her call him names too foul to mention. When it is remembered that it was a stipulated hearing wherein defendant was represented by an attorney, and that some of the allegations had been softened down, at her request, we consider the testimony sufficient.

(3) The third grounds for opening the decree is that there was no service of a summons and complaint upon the defendant to give the court jurisdiction. In paragraph one we have set out the affidavits upon this phase of the subject, and we are of the opinion that the service upon her has been conclusively established.

(4) The fourth ground is that no attorney was authorized to appear

or act for her in said action. The affidavits in paragraph one conclusively establish that she employed J. J. Sampson and that he was authorized by her to appear in said action. It is our conclusion that the decree should not have been disturbed. It appears to us that the defendant made her own property settlements with her husband, but upon further consideration, and probably upon outside advice, believes she is entitled to more.

While the public is interested in all divorce suits, it is not so particularly interested in the division of property. The defendant insists that her husband did not want the divorce, and did not even know about it; but this is not borne out by his letters, and is contradicted by the admitted fact that he has not remarried her.

The trial court will reinstate the decree.