## COLE et al. v. BLANKENSHIP.

Circuit Court of Appeals, Fourth Circuit. January 14, 1929.

No. 2736.

George Poffenbarger, of Charleston, W. Va. (C. M. Ward, of Beckley, W. Va., B. J. Pettigrew and Poffenbarger & Poffenbarger, all of Charleston, W. Va., on the brief), for appellants.

Henry S. Cato, of Charleston, W. Va. (H. W. Houston, of Charleston, W. Va., on the brief), for appellee.

Before NORTHCOTT, Circuit Judge, and WATKINS and SOPER, District Judges.

WATKINS, District Judge. This is an appeal from the decree of the District Court of the United States for the Southern District of West Virginia, by which appellee was awarded dower in numerous tracts or parcels of land now held by appellants under differ-

ent claims of title—some in severalty under deeds, others by a number of the appellants as tenants in common through inheritance. All these titles were derived through Patrick L. Blankenship, deceased.

The bill of complaint alleges appellee's marriage to said Blankenship and his seizure of said lands during coverture, while the answer sets up the defense that dower was forfeited under the laws of West Virginia because of appellee's willful desertion of her husband without just cause, persisted in until and at the time of his death, because of a divorce a mensa obtained by him upon these grounds, and also because of certain written agreements in which she released her claim of dower. The marriage took place on May 17, 1923, and thereafter the contracting parties lived together for only a brief and turbulent period. On June 11, 1923, they separated, after entering into a written agreement in which the wife contracted to receive the sum of $3,000 in lieu of dower, and in which she admitted that she had left her husband willfully, voluntarily, and without any just cause that would entitle her to dower. Any effect, however, that this agreement might have had in barring the right of dower, was destroyed by a reconciliation a few days later, which resulted in the wife's then returning to the home of the husband, where she remained until October 6, 1923, under circumstances of constant mutual recriminations. They then separated again, after executing a second written agreement, in which it was stated that they could not live together agreeably; the wife declaring her intention of leaving the husband and agreeing to accept $1,000, together with the amount of money already paid her as a consideration for the relinquishment of all dower rights and all claims of support. Subsequent to this time they never lived together or became reconciled, though there is testimony on the wife's part that she did on a subsequent single occasion return to Beckley, where the husband lived, spent the night, and cohabited with him at his request, and from the evidence we are inclined to believe this statement to be true.

On October 18, 1923, Blankenship filed his bill for divorce in the circuit court of Raleigh county, alleging inter alia that he was and had been for more than one year next preceding the filing of the bill a resident and actual bona fide citizen of West Virginia. He also alleged willful abandonment and desertion, without just cause, by the wife, beginning on October 6, 1923, continuing until and at the time of the filing of the bill. The complaint contained no allegation that the plaintiff resided in Raleigh county, or that the last cohabitation took place therein. It was alleged, however, that the defendant then resided, and had resided from the time of the separation, in the city of Charleston, W. Va. Process was duly served on the defendant on October 19, 1923, and, after due notice to her, depositions were taken and filed, and the commissioner filed his report, which, after stating the grounds of the divorce to be willful and continued desertion testified to by two witnesses, reported the proceeding and proof to be regular, and recommended that a divorce be granted from bed and board. The final decree in the cause was passed on December 6, 1923; it being therein recited that process had been duly issued and served, that depositions had been taken after due and legal notice, that defendant had defaulted in appearance, and it was ordered that the report of the commissioner should be confirmed, that plaintiff was entitled to the relief prayed for, and a divorce a mensa was decreed. From this decree no appeal was taken, and no direct attack upon the judgment has ever been made by appellee, by motion or otherwise, in the original cause.

While it is undoubtedly true, as shown by the testimony in the divorce case and in the subsequent proceedings hereinafter referred to, that Blankenship, prior and at all times subsequent to his marriage with appellee, resided in the town of Beckley, in Raleigh county, and that this was the locus of last cohabitation of the parties, such fact, however, as above stated, is nowhere alleged in the bill of complaint for divorce, and is in no way inferable from the allegations thereof, unless the assertion of his being a resident of the state of West Virginia, coupled with the proper statement of the venue in the caption of the bill as Raleigh county, furnish a basis for such inference. Certainly this would have been insufficient, if tested by proper and timely motion in the original cause.

On or about April 5, 1924, appellee filed in the circuit court of Raleigh county a bill to set aside the divorce decree on the ground that the evidence upon which it had been obtained was false, and that the decree had been obtained by fraud and perjury. In this complaint it is shown that Blankenship's home, from which appellee asserts that she was driven away, was in the town of Beckley, which is in Raleigh county, and she further alleges therein that her last cohabitation with him was at that place. In this suit a large volume of testimony was taken, and the case

was matured for hearing at a term of the court held in February, 1925. Meanwhile, Blankenship had died, and an order was passed reviving the suit in the name of his personal representative, and on February 28, 1925, after having heard the depositions on behalf of both parties and argument of counsel, the court adjudged that plaintiff had failed to sustain the allegations of the bill, and the same was dismissed. It does not appear that at any time in that proceeding did the plaintiff therein raise any question as to the jurisdiction of the court, and no appeal was ever taken from the final decree, nor has any attack thereon been made, by motion or otherwise, in the original cause.

■ The suit in the instant case was begun on March 27, 1926. The court therein held that the divorce decree a mensa did not, under the laws of West Virginia, bar the right of dower; that the parties had separated by agreement; that appellee did not separate from her husband, except for reasons that would have entitled her to a divorce from bed and board; that the separation agreement did not bar the right of dower; and that the divorce decree was null and void, and the proceeding to set same aside was absolutely unnecessary and meaningless. If this decision of the District Court, declaring the divorce proceeding and subsequent suit to annul the same to be void and meaningless, should be sustained, and our decision rest alone upon the conduct of the parties as determining the question of forfeiture of dower, it must be said that there is much in the evidence and in the law to sustain the decree of the learned District Judge. It is well settled that a decree of divorce a mensa is of itself alone no bar to the right of dower. So long as the bonds of matrimony are unbroken, the wife cannot be deprived of her marital rights in her husband's property, if not otherwise forfeited. Kittle v. Kittle, 86 W. Va. 46, 102 S. E. 799; Hartigan v. Hartigan, 65 W. Va. 471, 64 S. E. 726, 131 Am. St. Rep. 973, 17 Ann. Cas. 728; Perine v. Perine, 92 W. Va. 530, 114 S. E. 871.

This, however, does not import that the mere limitation of the decree to a divorce a mensa will preserve the right of dower otherwise forfeited under the statute. Section 7, chapter 65, of Barnes' West Virginia Code, provides that, if a wife voluntarily leave her husband without such cause as would entitle her to a divorce from the bond of matrimony, or from bed and board, and without such cause and of her own free will be living separate and apart from him at the time of his death, she shall be barred of her dower. It

is conceded that the parties lived separate and apart from each other from the time of their separation on October 6, 1923, until and at the time of the husband's death. It is evident from the testimony that both parties were devoid of exalted moral character. The husband indulged in rages of ungovernable temper and exhibited evidence of bestial passion and immorality. The wife had been guilty of immorality, resulting in illegitimate offspring, and the relations of the parties, while so briefly living together, failed to furnish the slightest evidence of a recognition of the sanctity which should characterize the marital relation. The indications are that neither found it agreeable, if, indeed, even possible, to endure the odious companionship of the other. The evidence in the instant case shows that one of the chief causes of the separation was due to the husband's treatment of and recriminations concerning the wife's illegitimate child. It must be evident, however, that the husband knew before the marriage of the existence of this child, as well as its status, and that impliedly, at least, he was under obligation to accord it proper treatment and furnish it a home along with its mother.

■■ We agree with the District Judge, also, in holding that the contracts for separation did not furnish sufficient basis for the denial of dower. In order to do so, they must have been fair and just, wholly free from exception, and such as a court of equity might have imposed upon the parties in a case in which their persons and property had fallen under its jurisdiction and control, and the negotiations must clearly have appeared to have been such as to show that the wife acted with perfect freedom, and with full knowledge and appreciation of her individual and marital rights. Switzer v. Switzer, 26 Grat. (Va.) 574; Hartigan v. Hartigan, 58 W. Va. 610, 52 S. E. 720. The attorney who drew these agreements was the personal attorney of Blankenship, and represented him in the divorce proceeding, while the wife had no separate counsel, and there is no evidence that the wife was fully advised of her rights, or that she acted with proper knowledge thereof. On the contrary, the small amount which she received was so out of proportion to the evident value of the husband's real estate as to furnish but a trifling consideration of the value of what was attempted to be released. The bill of complaint alleges, and the answer admits, the ownership by Blankenship of very large quantities of valuable land and the value of the right of dower, if it exists, is greatly in excess of the con-

sideration named. The result of the agreements, taken in connection with the fact that the wife was dealing, not only with a husband of shrewdness and financial ability, but also with the lawyer representing antagonistic interests, furnish convincing proof that she neither understood nor was fairly advised of her rights, and that the terms agreed upon were not such as would commend themselves to the conscience of a chancellor.

It will be seen, from the foregoing discussion, that not only because of the persuasive effect of the determination of the issues of fact by the District Judge, but also because of the preponderance of the evidence, the decree should not be disturbed, unless controlled by the former judgments of the West Virginia courts. This question must be determined, first of all, upon the validity and effect of the decree in the divorce suit. The right of divorce alleged in that suit is clearly one that operates as a bar to dower under the statute, it being undisputed that desertion continued until the husband's death. In the case of Bodkin v. Arnold, 45 W. Va. 90, 30 S. E. 154, it is held that a decree is conclusive as to existence or nonexistence of every fact upon which it depends, and in that respect binding upon the parties to the suit and those claiming through them. In the very recent case of Lockard v. Whitenack (Va.) 144 S. E. 606, while it is held that a person not served with process may always show that fact, it is also held that where a case is tried on its merits, and no objection made to the sufficiency of plaintiff's statement of meritorious defense, such objection could not be interposed for the first time on appeal. In Walker v. Commonwealth, 144 Va. 648, 131 S. E. 230, the court states that the record imports such absolute verity that no evidence will be received to add to it or subtract from it, except under statutory permission. In 34 Corpus Juris, p. 95, § 255, it is stated that the judgment roll or record proper is of such uncontrollable credit and verity as to admit of no averment, plea, or proof to the contrary, but that it is conclusive evidence of the facts which it recites, and cannot be contradicted in a collateral proceeding. See, also, Irby v. Southern Ry., 92 S. C. 490, 75 S. E. 793; Trimmier v. Thomson, 19 S. C. 247; People ex rel. v. Noonan, 276 Ill. 430, 114 N. E. 928; Huntington Park Imp. Co. v. Superior Court of Los Angeles County, 17 Cal. App. 692, 121 P. 701; Van Orman v. Phelps, 9 Barb. (N. Y.) 500; Leman v. MacLennan, 28 Ohio Cir. Ct. R. 137, judgment affirmed 75 Ohio St. 643, 80 N. E. 1129; Cottrell v. Reams, 145 S. E. 317, decided by

the Supreme Court of Appeals of Virginia, October 30, 1928.

It is contended, however, that the divorce decree is absolutely void for lack of jurisdiction, and particular reliance is stressed by appellee on the case of Jennings v. McDougle, 83 W. Va. 186, 98 S. E. 162. An analysis of that case will show that it was a direct attack, made in the original cause, upon the jurisdiction of the court before any decree was entered. The proceeding was by prohibition, to prevent the court from further proceeding in the cause and from entering any decree. There was a direct attack upon the power of the court to entertain the bill, because of its failure to allege a jurisdictional fact, and the writ of prohibition was granted upon that ground. One of the cases therein cited and chiefly relied upon is Roberts v. Hickory Coal, etc., Co., 58 W. Va. 276, 52 S. E. 182. That case, however, related to a judgment rendered by a justice of the peace of West Virginia, the court not being a court of record, and the facts showed that, not only the jurisdiction of the court failed to appear from the record, but that the record itself disclosed that under the statute the court was wholly without jurisdiction, and that the judgment attacked was absolutely void. In the divorce case involved in the instant controversy, it is undisputed that the venue was laid in the proper county; it being alleged that both parties were residents of West Virginia, and that the court was one which, under proper pleadings, would have had jurisdiction both of the persons and subject-matter of the controversy, and in which due process was served to bring the defendant into court. The case of Jennings v. McDougle, therefore, cannot be regarded as authority, unless it be held that the judgment in the divorce suit is absolutely void.

The great weight of authorities is to the effect that, where a suit is brought in the proper court, having the actual power of jurisdiction over both the parties and subject-matter, where the main cause of action is properly set out, and the only defect is the failure to allege the residence of the parties as giving jurisdiction, a judgment rendered in such cause must be attacked by motion or other proper proceeding in the original cause or for fraud in its procurement. As stated above, the case of Jennings v. McDougle relates to proper proceedings in the original cause before judgment, and any language construed as governing the facts of the instant case would not only be obiter dictum, but in conflict with well-settled rules of law.

Considerable confusion has arisen, resulting in apparent or real conflict of the decisions because of inaccurate designation of judgments as void, which in reality are merely voidable.

The weight both of authority and reason is to the effect that no judgment should be declared void wherein, as here, the venue is properly laid in a court of general jurisdiction in a state of which both parties are residents, and in which the defendant has been duly served with process, in a suit which fully advises the defendant of the relief sought, accompanied by adequate allegations of the cause of action, and where the court is vested with general jurisdiction over both the parties and the subject-matter. In Freeman, Judgments (4th Ed.) p. 116, it is stated that void judgments must be so because of want of jurisdiction over the subject-matter, want of jurisdiction over the parties, or want of power to grant the relief contained in the judgment. Pitkin v. Burnham, 62 Neb. 385, 87 N. W. 160, 55 L. R. A. 280, 89 Am. St. Rep. 763. And it has been held that in some cases even a void judgment will operate as a bar, unless by proper application it has been vacated or reversed. Pitkin v. Burnham, supra, and cases therein cited. In 19 Corpus Juris, p. 168, § 417, it is stated that the general presumption is that the judgments of superior courts were regularly rendered, even though the record does not disclose that the court acquired jurisdiction, and the fact that there was no allegation or finding as to plaintiff's residence is not ground for setting aside the decree after expiration of the time for appeal—citing Wells v. Wells, 10 N. Y. St. Rep. 248; McCanna v. McCanna, 28 N. D. 30, 147 N. W. 718; Finch v. Frymire (Tenn. Ch. App.) 36 S. W. 883; Faulkner v. Faulkner, 90 Wash. 74, 155 P. 404. See, also, 19 Corpus Juris, p. 160, § 404, wherein it is stated that the decree is not necessarily void on its face, because it fails to recite some jurisdictional fact, such as notice to the defendant, or plaintiff's residence, or the fact that the cause for divorce arose in the state.

In Jarrell v. Cole (4th C. C. A.) 215 F. 315, L. R. A. 1916E, 298, this being an appeal from the District Court for the Southern District of West Virginia, it is held that, where a court has jurisdiction of the subject-matter and of the parties, its judgment cannot be collaterally attacked on the ground of its want of jurisdiction to grant the relief adjudged because of error, insufficiency of recitals in the record, or any defect or irregularity in the pleadings or proceedings.

The court calls attention to the statute of West Virginia, which requires every person designated in the caption of the bill of complaint as a defendant, without prayer that he be made such, shall be a defendant, and required to answer the bill to the same extent as if he were therein called upon to do so. Quoting from Van Fleet on Collateral Attack, § 61, p. 79, the court says that, if it can be gathered from the allegations, either directly or inferentially, that the party was seeking the relief granted, or was entitled thereto, these allegations will shield the judgment from collateral attack; also, that there is no connection between jurisdiction and sufficient allegations; in other words, that in order to set the judicial mind in motion, or to challenge the attention of the court, it is not necessary that any material allegation should be sufficient in law, or that it should even tend to show facts that are sufficient, and that, if the allegations are sufficient to inform the defendant what relief the plaintiff demands, the court having power to grant it in a proper case, jurisdiction exists, and the defendant must defend himself; also, that immaterial and wholly insufficient allegations in law may be sufficient to give a wrongful, but actual, jurisdiction which will shield the proceedings from collateral attack.

Among the cases quoted in support of this view are Grignon's Lessee v. Astor, 43 U. S. (2 How.) 319, 339 (11 L. Ed. 283); Florentine v. Barton, 69 U. S. (2 Wall.) 210, 217 (17 L. Ed. 783); Kirk v. Hamilton, 102 U. S. 68, 26 L. Ed. 79; Lemmon v. Herbert, 92 Va. 653, 24 S. E. 250; Wood v. Browning (C. C. A.) 176 F. 273. In the case of Toland v. Sprague, 12 Pet. 300, 9 L. Ed. 1093, it is held that, where the case is one of want of jurisdiction in the court, that is to say, want of power to act in a particular case, the parties may not even by consent confer jurisdiction, but where the court has jurisdiction over the parties and the matter in dispute, the objection to the jurisdiction of the court serving personal process is a personal privilege or exemption, which it is competent for the party to waive. In Ex parte Schollenberger, 96 U. S. 369, 24 L. Ed. 853, the court says that the act of Congress describing the place where a person may be sued is not one affecting the general jurisdiction of the courts. It is rather in the nature of a personal exemption in favor of the defendant, and it is one which he may waive. Also, in First National Bank of Charlotte v. Morgan, 132 U. S. 141, 10 S. Ct. 37, 33 L. Ed. 282, it is held that the exemption of national banking associations from suits in state

courts, established elsewhere than in the county or city in which such associations are located, was prescribed for the convenience of those institutions, and that an appearance for the purpose of claiming the exemption, if made, must have been recognized by the court in which the suit was improperly brought. It was held, however, that the defendant was bound by the judgment because of its failure to claim immunity. Also, in the case of In re Moore, 209 U. S. 490, 28 S. Ct. 585, 52 L. Ed. 904, 14 Ann. Cas. 1164, it is held that a party may elect to accept the jurisdiction of the court, although primarily the court would have been without jurisdiction. The same rule, pronounced in the case of Jarrell v. Cole, supra, to the effect that a defect or irregularity in the pleadings will not invalidate a judgment, is upheld by the Supreme Court of Appeals of West Virginia in Jarrell v. Laurel Coal & Land Co., 75 W. Va. 752, 84 S. E. 933, L. R. A. 1916E, 312. See, also, Mullins v. Laurel Coal & Land Co., 75 W. Va. 783, 84 S. E. 937; 34 Corpus Juris, § 708; Hewitt v. Great Western Sugar Co. (C. C. A.) 230 F. 394; 15 Corpus Juris, 733; Herron v. Dater, 120 U. S. 464, 7 S. Ct. 620, 30 L. Ed. 748; Robinson v. Surburban Brick Co. (C. C. A.) 127 F. 804.

In testing the necessity of incorporating jurisdictional averments in a bill of complaint, there can be no doubt that the Circuit and District Courts of the United States are subject to limitations certainly as strict as are applicable to courts of record and of general jurisdiction of any sovereign state. They are designated by the Constitution itself as inferior courts, and their jurisdiction must not only be based upon statutory authority, but must be averred in the pleadings. Turner v. Bank of North America, 4 Dall. 6, 1 L. Ed. 718. It was held, however, in the early case of Skillern's Executors v. May's Executors (1810) 6 Cranch, 267, 3 L. Ed. 220, that where the merits of the cause had been finally decided by the Supreme Court, and its mandate returned to the court below, the decree must be carried into effect, although the jurisdiction of the trial court had not been alleged in the pleadings. The doctrine was reaffirmed in Ex parte Watkins, 3 Pet. 193, at page 206 (7 L. Ed. 650), the court holding that the decree, having been pronounced, although in a case in which it was erroneous for the lack of averment of jurisdictional facts, was nevertheless obligatory as a decree. See, also, Kempe v. Kennedy, 5 Cranch, 173, 3 L. Ed. 70; Williams et al. v. Armroyd et al., 7 Cranch, 423, 3 L. Ed. 392; McCormick

et al. v. Sullivant et al., 10 Wheat. 192, 6 L. Ed. 300. In the case last cited, it was held that the United States Circuit Courts, while of limited, are not of inferior, jurisdiction, and although there be an absence of jurisdictional averments in the proceedings, which would subject their judgments and decrees to reversal on writ of error or appeal, they are, until so reversed, conclusive evidence between parties and privies.

The earlier cases have been followed by numerous decisions of the Supreme Court, which uniformly hold that such judgments are not subject to collateral attack, because of the absence of jurisdictional allegations in the pleadings. Among these cases are Des Moines Navigation & Railroad Co. v. Iowa Homestead Co., 123 U. S. 552, 8 S. Ct. 217, 31 L. Ed. 202; Dowell v. Applegate, 152 U. S. 327, 14 S. Ct. 611, 38 L. Ed. 463; Evers v. Watson, 156 U. S. 527, 15 S. Ct. 430, 39 L. Ed. 520. In his Federal Jurisdiction and Procedure (3d Ed.) §§ 11 and 12, Judge Rose states that, if a suit proceeds to final judgment or decree, and the time in which an appeal can be taken, or a writ of error sued out, goes by without action, the judgment or decree is presumed to be valid and binding to the same extent as under like circumstances that of a state court of analogous rank would be. Also, after discussing the power of the appellate tribunal to dismiss a case because of the lack of an affirmative showing of jurisdiction, he adds that there comes a time after which the binding force of the judgment or decree can no longer be assailed on the ground that the record does not affirmatively show jurisdiction. The case here presented clearly falls within this rule.

As will be seen from the facts heretofore set out, appellee has not only failed to make any timely entry of objection to the court's jurisdiction by a direct attack in the original cause, but by her subsequent suit in the circuit court of Raleigh county has voluntarily submitted to its jurisdiction for the purpose of testing the validity of the divorce decree. It is contended, however, that the affirmance of the decree in that case is void because of the previous death of the husband. If that case had been one originally brought for the purpose of procuring a divorce, the contention would not be without merit. Kittle v. Kittle, 86 W. Va. 46, 102 S. E. 799. The primary purpose of a divorce suit relates to the status of the parties, while incidental thereto is the court's right to decree alimony, provide for support, and make orders relative to the care and custody of children. We think, however, that a suit for

the annulment of a divorce rests upon different grounds.

In the case under consideration it is apparent that its main object was to restore and determine property rights. Had it succeeded, the decree itself would prima facie have restored dower rights. To hold that the suit was abated by the death of the husband would be to declare that after such event the plaintiff herself would have been barred from further proceeding in the cause. If a judgment of divorce may be attacked after the husband's death, it may also be affirmed in a suit to set it aside. Even if this were not true, appellee is again confronted with the fact that she participated, through counsel, in the further and final proceedings in the cause, without raising this objection before the decree was rendered, and without appeal or other direct proceedings in the cause to have the decree set aside. Twice she has stood by until final judgment and without appeal, and her objection to the decree cannot now be entertained. There should and must be somewhere an end to the right of litigation.

Our conclusion is that the judgment of the District Court should be and is reversed.